480 So.2d 625 (1985)
Clarence H. JOHNSON and Dana Johnson, His Wife, Petitioners,
v.
Morton DAVIS and Edna Davis, His Wife, Respondents.
No. 65330.
Supreme Court of Florida.
October 31, 1985.
Rehearing Denied January 20, 1986.
*626 Mitchell W. Mandler and Patricia M. Silver of Smith & Mandler, Miami Beach, for petitioners.
Stanley M. Newmark, Joe N. Unger of the Law Offices of Joe N. Unger, Miami, and Joseph G. Abromovitz, Boston, Mass., for respondents.
ADKINS, Justice.
We have before us a petition to review the decision in Johnson v. Davis, 449 So.2d 344 (Fla. 3d DCA 1984), which expressly and directly conflicts with Banks v. Salina, 413 So.2d 851 (Fla. 4th DCA 1982), and Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla. 2d DCA 1961). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and approve the decision of the district court.
In May of 1982, the Davises entered into a contract to buy for $310,000 the Johnsons' home, which at the time was three years old. The contract required a $5,000 deposit payment, an additional $26,000 deposit payment within five days and a closing by June 21, 1982. The crucial provision of the contract, for the purposes of the case at bar, is Paragraph F which provided:
F. Roof Inspection: Prior to closing at Buyer's expense, Buyer shall have the right to obtain a written report from a licensed roofer stating that the roof is in a watertight condition. In the event repairs are required either to correct leaks or to replace damage to facia or soffit, seller shall pay for said repairs which shall be performed by a licensed roofing contractor.
The contract further provided for payment to the "prevailing party" of all costs and reasonable fees in any contract litigation.
Before the Davises made the additional $26,000 deposit payment, Mrs. Davis noticed some buckling and peeling plaster around the corner of a window frame in the family room and stains on the ceilings in the family room and kitchen of the home. Upon inquiring, Mrs. Davis was told by Mr. Johnson that the window had had a minor problem that had long since been corrected and that the stains were wallpaper glue and the result of ceiling beams being moved. There is disagreement among the parties as to whether Mr. Johnson also told Mrs. Davis at this time that there had never been any problems with the roof or ceilings. The Davises thereafter paid the remainder of their deposit and the Johnsons vacated the home. Several days later, following a heavy rain, Mrs. Davis entered the home and discovered water "gushing" in from around the window frame, the ceiling of the family room, the light fixtures, the glass doors, and the stove in the kitchen.
Two roofers hired by the Johnsons' broker concluded that for under $1,000 they could "fix" certain leaks in the roof and by doing so make the roof "watertight." Three roofers hired by the Davises found that the roof was inherently defective, that any repairs would be temporary because the roof was "slipping," and that only a new $15,000 roof could be "watertight."
The Davises filed a complaint alleging breach of contract, fraud and misrepresentation, and sought recission of the contract and return of their deposit. The Johnsons counterclaimed seeking the deposit as liquidated damages.
The trial court entered its final judgment on May 27, 1983. The court made no findings of fact, but awarded the Davises $26,000 plus interest and awarded the Johnsons *627 $5,000 plus interest. Each party was to bear their own attorneys' fees.
The Johnsons appealed and the Davises cross-appealed from the final judgment. The Third District found for the Davises affirming the trial court's return of the majority of the deposit to the Davises ($26,000), and reversing the award of $5,000 to the Johnsons as well as the court's failure to award the Davises costs and fees. Accordingly, the court remanded with directions to return to the Davises the balance of their deposit and to award them costs and fees.
The trial court included no findings of fact in its order. However, the district court inferred from the record that the trial court refused to accept the Davises' characterization of the roof inspection provision of the contract. The district court noted that if there was a breach, the trial court would have ordered the return of the Davises' entire deposit because there is no way to distinguish the two deposit payments under a breach of contract theory. We agree with this interpretation and further find no error by the trial court in this respect.
The contract contemplated the possibility that the roof may not be watertight at the time of inspection and provided a remedy if it was not in such a condition. The roof inspection provision of the contract did not impose any obligation beyond the seller correcting the leaks and replacing damage to the facia or soffit. The record is devoid of any evidence that the seller refused to make needed repairs to the roof. In fact, the record reflects that the Davises' never even demanded that the areas of leakage be repaired either by way of repair or replacement. Yet the Davises insist that the Johnsons breached the contract justifying recission. We find this contention to be without merit.
We also agree with the district court's conclusions under a theory of fraud and find that the Johnsons' statements to the Davises regarding the condition of the roof constituted a fraudulent misrepresentation entitling respondents to the return of their $26,000 deposit payment. In the state of Florida, relief for a fraudulent misrepresentation may be granted only when the following elements are present: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation. See Huffstetler v. Our Home Life Ins. Co., 67 Fla. 324, 65 So. 1 (1914).
The evidence adduced at trial shows that after the buyer and the seller signed the purchase and sales agreement and after receiving the $5,000 initial deposit payment the Johnsons affirmatively repeated to the Davises that there were no problems with the roof. The Johnsons subsequently received the additional $26,000 deposit payment from the Davises. The record reflects that the statement made by the Johnsons was a false representation of material fact, made with knowledge of its falsity, upon which the Davises relied to their detriment as evidenced by the $26,000 paid to the Johnsons.
The doctrine of caveat emptor does not exempt a seller from responsibility for the statements and representations which he makes to induce the buyer to act, when under the circumstances these amount to fraud in the legal sense. To be grounds for relief, the false representations need not have been made at the time of the signing of the purchase and sales agreement in order for the element of reliance to be present. The fact that the false statements as to the quality of the roof were made after the signing of the purchase and sales agreement does not excuse the seller from liability when the misrepresentations were made prior to the execution of the contract by conveyance of the property. It would be contrary to all notions of fairness and justice for this Court to place its stamp of approval on an affirmative misrepresentation by a wrongdoer just because it was made after the signing of the executory contract when all of the *628 necessary elements for actionable fraud are present. Furthermore, the Davises' reliance on the truth of the Johnsons' representation was justified and is supported by this Court's decision in Besett v. Basnett, 389 So.2d 995 (1980), where we held "that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." Id. at 998.
In determining whether a seller of a home has a duty to disclose latent material defects to a buyer, the established tort law distinction between misfeasance and nonfeasance, action and inaction must carefully be analyzed. The highly individualistic philosophy of the earlier common law consistently imposed liability upon the commission of affirmative acts of harm, but shrank from converting the courts into an institution for forcing men to help one another. This distinction is deeply rooted in our case law. Liability for nonfeasance has therefore been slow to receive recognition in the evolution of tort law.
In theory, the difference between misfeasance and nonfeasance, action and inaction is quite simple and obvious; however, in practice it is not always easy to draw the line and determine whether conduct is active or passive. That is, where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative representations is tenuous. Both proceed from the same motives and are attended with the same consequences; both are violative of the principles of fair dealing and good faith; both are calculated to produce the same result; and, in fact, both essentially have the same effect.
Still there exists in much of our case law the old tort notion that there can be no liability for nonfeasance. The courts in some jurisdictions, including Florida, hold that where the parties are dealing at arms's length and the facts lie equally open to both parties, with equal opportunity of examination, mere nondisclosure does not constitute a fraudulent concealment. See Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla. 2d DCA 1961). The Fourth District affirmed that rule of law in Banks v. Salina, 413 So.2d 851 (Fla. 4th DCA 1982), and found that although the sellers had sold a home without disclosing the presence of a defective roof and swimming pool of which the sellers had knowledge, "[i]n Florida, there is no duty to disclose when parties are dealing at arms length." Id. at 852.
These unappetizing cases are not in tune with the times and do not conform with current notions of justice, equity and fair dealing. One should not be able to stand behind the impervious shield of caveat emptor and take advantage of another's ignorance. Our courts have taken great strides since the days when the judicial emphasis was on rigid rules and ancient precedents. Modern concepts of justice and fair dealing have given our courts the opportunity and latitude to change legal precepts in order to conform to society's needs. Thus, the tendency of the more recent cases has been to restrict rather than extend the doctrine of caveat emptor. The law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it.
The harness placed on the doctrine of caveat emptor in a number of other jurisdictions has resulted in the seller of a home being liable for failing to disclose material defects of which he is aware. This philosophy was succinctly expressed in Lingsch v. Savage, 213 Cal. App.2d 729, 29 Cal. Rptr. 201 (1963):
It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.
In Posner v. Davis, 76 Ill. App.3d 638, 32 Ill.Dec. 186, 395 N.E.2d 133 (1979), buyers *629 brought an action alleging that the sellers of a home fraudulently concealed certain defects in the home which included a leaking roof and basement flooding. Relying on Lingsch, the court concluded that the sellers knew of and failed to disclose latent material defects and thus were liable for fraudulent concealment. Id. 32 Ill.Dec. at 190, 395 N.E.2d at 137. Numerous other jurisdictions have followed this view in formulating law involving the sale of homes. See Flakus v. Schug, 213 Neb. 491, 329 N.W.2d 859 (1983) (basement flooding); Thacker v. Tyree, 297 S.E.2d 885 (W. Va. 1982) (cracked walls and foundation problems); Maguire v. Masino, 325 So.2d 844 (La. Ct. App. 1975) (termite infestation); Weintraub v. Krobatsch, 64 N.J. 445, 317 A.2d 68 (1974) (roach infestation); Cohen v. Vivian, 141 Colo. 443, 349 P.2d 366 (1960) (soil defect).
We are of the opinion, in view of the reasoning and results in Lingsch, Posner and the aforementioned cases decided in other jurisdictions, that the same philosophy regarding the sale of homes should also be the law in the state of Florida. Accordingly, we hold that where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer. This duty is equally applicable to all forms of real property, new and used.
In the case at bar, the evidence shows that the Johnsons knew of and failed to disclose that there had been problems with the roof of the house. Mr. Johnson admitted during his testimony that the Johnsons were aware of roof problems prior to entering into the contract of sale and receiving the $5,000 deposit payment. Thus, we agree with the district court and find that the Johnsons' fraudulent concealment also entitles the Davises to the return of the $5,000 deposit payment plus interest. We further find that the Davises should be awarded costs and fees.
The decision of the Third District Court of Appeals is hereby approved.
It is so ordered.
OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., concurs in result only.
BOYD, C.J., dissents with an opinion.
BOYD, Chief Justice, dissenting.
I respectfully but strongly dissent to the Court's expansion of the duties of sellers of real property. This ruling will give rise to a flood of litigation and will facilitate unjust outcomes in many cases. If, as a matter of public policy, the well settled law of this state on this question should be changed, the change should come from the legislature. Moreover, I do not find sufficient evidence in the record to justify rescission or a finding of fraud even under present law. I would quash the decision of the district court of appeal.
My review of the record reveals that there is not adequate evidence from which the trier of fact could have found any of the following crucial facts: (a) that at the time Johnson told Mrs. Davis about the previous leaks that had been repaired, he knew that there was a defect in the roof; (b) that at that time or the time of the execution of the contract, there were in fact any defects in the roof; (c) that it was not possible to repair the roof to "watertight" condition before closing.
As the district court and this Court's majority have implied but have not stated, we are hampered by the lack of specific written findings by the trial court on issues of fact and the application of the law to the facts. Some of the issues on which specific findings would be helpful are: (a) what was the condition of the roof at the time of the discussion between Mr. Johnson and Mrs. Davis after the Davises had paid the partial deposit of $5,000 and before they paid the additional $26,000, and had it in fact leaked more recently than 1979? (b) what was the extent of Mr. Johnson's knowledge of the condition of the roof at *630 the time of the signing of the contract and at the time of the conversation? (c) during that conversation, did Mr. Johnson say that there were no problems with the roof or that he had not experienced any problems with it since the time of the previous repairs? (d) was it possible, and at what cost, to repair the roof to watertight condition and had the sellers complied with their contractual obligation by offering to do so? On these crucial questions, there is insufficient evidence to justify a finding of fraudulent misrepresentation or nondisclosure of material facts.
It should be noted that very soon after first seeing the house, the purchasers agreed to buy it for $310,000 and paid a deposit of $5,000. Of course they had full opportunity to inspect the house and to have it inspected by experts before they contracted to buy it. The contract of sale provided that prior to closing, the buyers would have the opportunity to have the roof inspected by a licensed roofer and that the seller would pay for repairs necessary to correct any leaks found and to restore the roof to watertight condition. Rather than demand that the necessary repairs be made, the purchasers announced that they would not complete the sale and demanded return of their deposit. The sellers indicated that they were willing to repair the leaks and make the roof watertight but were not prepared to go beyond their contractual obligation by undertaking to ensure "future watertight integrity" of the roof as demanded by the purchasers. The buyers had agreed that in the event of a breach by them, the sellers could retain the deposit paid as liquidated damages.
The district court of appeal referred to evidence showing that Mr. Johnson told Mrs. Davis about previous leaks that had been repaired. From this fact the district court found that Mr. Johnson had knowledge that the roof was in a defective condition at the time of the conversation. This evidence simply does not provide substantial, competent evidence to support the factual conclusion drawn by the third district.
Homeowners who attempt to sell their houses are typically in no better position to measure the quality, value, or desirability of their houses than are the prospective purchasers with whom such owners come into contact. Based on this and related considerations, the law of Florida has long been that a seller of real property with improvements is under no duty to disclose all material facts, in the absence of a fiduciary relationship, to a buyer who has an equal opportunity to learn all material information and is not prevented by the seller from doing so. See, e.g., Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla. 2d DCA 1961). This rule provides sufficient protection against overreaching by sellers, as the wise and progressive ruling in the Ramel case shows. The Ramel decision is not the least bit "unappetizing."
The majority opinion sets forth the elements of actionable fraud as they are stated in Huffstetler v. Our Home Life Ins. Co., 67 Fla. 324, 65 So.1 (1914). Those elements were not established by sufficient evidence in this case. There was no competent, substantial evidence to show that Mr. Johnson made a false statement knowing it to be false. There was absolutely no evidence that the statement was made with the intention of causing Mrs. Davis to do anything; she had already contracted to purchase the house. There was no competent evidence that Mrs. Davis in fact relied on Mr. Johnson's statement or was influenced by it to do anything. And the only detriment or injury that can be found is that, when the Davises subsequently decided not to complete the transaction, they stood to forfeit the additional $26,000 deposit paid in addition to the original $5,000. The Davises had already agreed to pay the additional deposit at the time of the conversation. They had to pay the additional deposit if they wanted to preserve their rights under the contract. They chose to do so. Mr. Johnson's statements, even if we believe Mrs. Davis' version of them rather than Mr. Johnson's, did not constitute the kind of representation upon which a buyer's reliance is justified.
*631 I do not agree with the Court's belief that the distinction between nondisclosure and affirmative statement is weak or non-existent. It is a distinction that we should take special care to emphasize and preserve. Imposition of liability for seller's nondisclosure of the condition of improvements to real property is the first step toward making the seller a guarantor of the good condition of the property. Ultimately this trend will significantly burden the alienability of property because sellers will have to worry about the possibility of catastrophic post-sale judgments for damages sought to pay for repairs. The trend will proceed somewhat as follows. At first, the cause of action will require proof of actual knowledge of the undisclosed defect on the part of the seller. But in many cases the courts will allow it to be shown by circumstantial evidence. Then a rule of constructive knowledge will develop based on the reasoning that if the seller did not know of the defect, he should have known about it before attempting to sell the property. Thus the burden of inspection will shift from the buyer to the seller. Ultimately the courts will be in the position of imposing implied warranties and guaranties on all sellers of real property.
Although as described in the majority opinion this change in the law sounds progressive, high-minded, and idealistic, it is in reality completely unnecessary. Prudent purchasers inspect property, with expert advice if necessary, before they agree to buy. Prudent lenders require inspections before agreeing to provide purchase money. Initial deposits of earnest money can be made with the agreement to purchase being conditional upon the favorable results of expert inspections. It is significant that in the present case the major portion of the purchase price was to be financed by the Johnsons who were to hold a mortgage on the property. If they had been knowingly trying to get rid of what they knew to be a defectively constructed house, it is unlikely that they would have been willing to lend $200,000 with the house in question as their only security.
I would quash the decision of the district court of appeal. This case should be remanded for findings by the trial court based on the evidence already heard. The action for rescission based on fraud should be dismissed. The only issue is whether the Johnsons were in compliance with the contract at the time of the breach by the Davises. Resolving this issue requires a finding of whether the roof could have been put in watertight condition by spot repairs or by re-roofing and in either case whether the sellers were willing to fulfill their obligation by paying for the necessary work. If so, the Johnsons should keep the entire $31,000 deposit.