574 So.2d 1108 (1990)
Bruce E. WALLIS and Kate B. Wallis, Appellants,
v.
SOUTH FLORIDA SAVINGS BANK and Allegheny Oaks of Florida, Inc., Appellees.
No. 90-00560.
District Court of Appeal of Florida, Second District.
December 14, 1990.
Rehearing Denied February 20, 1991.
C. Lawrence Stagg, Margaret D. Mathews, and E. Jeanne Maguire of Stagg, Hardy, *1109 Ferguson, Murnaghan & Mathews, P.A., Tampa, for appellants.
Victoria H. Pflug and Richard R. Garland of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellee Allegheny Oaks of Florida, Inc.
John T. Kolinski and Melanie A. Dernis of Shutts & Bowen, Miami, for appellee South Florida Sav. Bank.
HALL, Judge.
The appellants filed suit against numerous parties, including the appellees, South Florida Savings Bank and Allegheny Oaks of Florida, Inc., alleging intentional misrepresentation, failure to disclose, conspiracy, and a right to subrogation.
The trial court found that the complaint failed to state a cause of action against the appellees. After due consideration of the amended complaint, we agree with the trial court and affirm the judgment dismissing the complaint with prejudice in all respects, except as to count I filed against South Florida Savings Bank.
As the facts are disputed and this appeal is based on a purely legal issue, we find it unnecessary to include a complete recitation of the facts as alleged in the complaint; however, we find that Count I has sufficient allegations with which to set forth a cause of action against South Florida for intentional misrepresentation. In count I it is alleged that South Florida made a statement it knew to be false with the intent that the appellants rely on it and that the appellants did rely on it and were thereby damaged.
We therefore affirm the order dismissing the amended complaint with prejudice as to all counts against Allegheny Oaks of Florida, Inc., and all counts against South Florida Savings Bank, except count I.
We reverse the dismissal of count I against South Florida Savings Bank and remand for further proceedings thereon.
Affirmed in part and remanded in part.
CAMPBELL, A.C.J., concurs.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
I concur in Judge Hall's opinion. I specifically concur in the wisdom of brevity in this case. The rules of appellate review require us to reverse a trial court's decision to dismiss a complaint for failure to state a cause of action "unless the allegations in the pleading attacked show with certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim." Midflorida Schools Fed. Credit Union v. Fansler, 404 So.2d 1178, 1180 (Fla. 2d DCA 1981). Occasionally, such a reversal may significantly alter or expand common law theories. Expanding or refining the common law on the basis of mere allegations is a dangerous practice. Too often the facts derived from a full evidentiary hearing may paint a picture which is substantially different from the allegations. A court which expands the common law based on allegations in a complaint may regret that decision when it confronts the rest of the story in a subsequent appeal. The reversal in this case recognizes that the allegations in the complaint may state a cause of action, but it creates no precedent which might prematurely alter the obligations of other persons involved in the financing of business transactions.
While it is appropriate for this court to defer any decision of significant precedential value on the questions presented by this case, it is also appropriate for us to disclose the nature of the significant issues which have been affirmed or reversed by this decision. I disclose these issues in this separate concurrence with the knowledge and comfort that a concurrence is not precedent and only alerts the public to the existence of these issues.
The amended complaint is lengthy. It describes a real estate development involving a complex business structure and multiple business transactions. This opinion provides only a brief synopsis of those allegations.
*1110 In 1983, Mr. and Mrs. Wallis purchased a home in the Oaks, a residential development in Osprey, Florida. In addition to their home, they obtained an option to purchase two bayfront lots across the street from their home.
The developer of the Oaks was a partnership between Allegheny Oaks of Florida, Inc., and a corporation controlled by Rodney Propps. In 1983, Allegheny became aware through external auditors that Mr. Propps was allegedly involved in unauthorized self-dealing and other improper acts. Allegheny decided to exercise a buy/sell provision in the partnership agreement that would require Mr. Propps to buy Allegheny's interest in the partnership.[1]
In order to purchase Allegheny's interest and finish the development, Mr. Propps needed approximately $34,000,000. He negotiated with South Florida Savings Bank for these funds. Initially, South Florida agreed to provide the full amount to Mr. Propps. In November 1984, however, it decided to issue a commitment letter which provided for only a $27,000,000 loan.
After receiving this commitment, Mr. Propps searched for additional financing. Park Bank agreed to loan an additional $4,500,000. In order to loan this amount in a position subordinate to South Florida, Park Bank required additional security. In December 1984, it was agreed that a personal guarantee from Mr. and Mrs. Wallis would serve as sufficient protection for Park Bank. Mr. Propps obtained the written guarantee from the Wallises in exchange for more favorable terms on the option to purchase the bayfront lots. Park Bank then loaned the funds to Mr. Propps.
Although South Florida issued a commitment letter for $27,000,000, the Wallises later discovered that South Florida's commitment substantially exceeded its lawful lending limit under the applicable banking regulations. As a result of that complication, South Florida failed to honor its commitment and the development went into foreclosure. The Wallises lost their option to buy the bayfront lots in the foreclosure.
Park Bank's loan was assumed by the FDIC after that bank's failure in 1986. The FDIC then demanded payment from the Wallises for the $4,500,000 plus interest which had not been paid by Mr. Propps. As a result of these developments, the Wallises sued Allegheny and South Florida.
The primary theory which the Wallises allege against Allegheny is a theory of misrepresentation through nondisclosure. The Wallises maintain that Allegheny knew of certain misconduct by Mr. Propps and that Allegheny had an affirmative obligation to disclose this information to the Wallises. It is significant that there is no contractual relationship or privity between Allegheny and the Wallises. Allegheny is merely the party which is selling its interest to the party who had allegedly committed the improprieties. The Wallises are guarantors of a subordinated bank involved in the buy-out transaction. Although the supreme court has extended the affirmative duty of a seller to disclose defects to a buyer in privity with the seller, Johnson v. Davis, 480 So.2d 625 (Fla. 1985), this affirmative duty to disclose has not been extended to other persons only indirectly involved in the business transaction. The trial court refused to expand the Johnson doctrine to these allegations. This court's opinion affirms that decision.
The primary theory which the Wallises allege against South Florida is a more traditional theory of fraud. They allege that South Florida made a material misrepresentation of fact concerning its ability to lend $27,000,000. South Florida allegedly knew this statement was untrue and knew that the Wallises were relying upon its accuracy when they agreed to guarantee the subordinated loan. They allege that South Florida intended to induce persons in their capacity to rely upon the incorrect information in the commitment letter. Finally, they allege that they were damaged by their justifiable reliance on the misrepresentation. *1111 If true, these allegations are enough to establish fraud  so long as the relationship between South Florida and the Wallises is sufficiently close to create a duty owing under a theory of fraud.
Frequently, the relationship which creates a duty owing in fraud is also a relationship involving contractual privity. See, e.g., Johnson. In this case, no contractual privity exists. It is not clear that the Wallises are third-party beneficiaries of any contract executed by South Florida. See Deanna Constr. Co. v. Sarasota Entertainment Corp., 563 So.2d 150 (Fla. 2d DCA 1990). There are occasions, however, when third persons with close connections to a business transaction may allege a cause of action in fraud or negligence against a party involved in the transaction. See 37 Am.Jur.2d Fraud and Deceit § 297 (1968). See generally First Fla. Bank v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990); Restatement (Second) of Torts § 552 (1976). The buy-out of this partnership was in the broadest sense a single business transaction. If the allegations of the complaint are true, South Florida certainly had reason to expect that another bank or a guarantor would rely upon its commitment to loan $27,000,000. The inaccuracy of that representation could greatly increase the risks of a subordinated bank or guarantor. If South Florida had actual knowledge that Mr. Propps was using the commitment letter to induce the Wallises or other people to undertake financial risks in this development, it does not appear ill-conceived to make the bank liable for some measure of resulting damage. By this court's decision, we are merely giving the Wallises an opportunity to prove a set of facts which establishes such a relationship and which also establishes the remaining elements of the alleged fraud.
NOTES
[1] Many of Mr. Propps' acts were done on behalf of or through corporations which he controlled. This opinion does not attempt to explain these differences because they are not essential to the issues disclosed in this concurrence.