721 So.2d 341 (1998)
Raymond SPITALE, Appellant,
v.
Charles H. SMITH, Appellee.
No. 97-00932.
District Court of Appeal of Florida, Second District.
October 21, 1998.
Rehearing Denied November 12, 1998.
*342 Alan E. Tannenbaum of Levin and Tannenbaum, P.A., Sarasota, for Appellant.
David S. Maglich of Fergeson, Skipper, Shaw, Keyser, Baron & Tirabassi, P.A., Sarasota, for Appellee.
FULMER, Judge.
Raymond Spitale appeals the trial court's entry of judgment against him for fraudulent nondisclosure of construction defects in a home he sold to Charles H. Smith. We are compelled to reverse because the evidence presented during the bench trial was insufficient to support a finding that Spitale had knowledge of and failed to disclose a defect materially affecting the value of the property.
In 1987, Mr. and Mrs. Spitale[1] contracted with Unicorn Construction to build a home on their lot in The Landings development in Sarasota. The home was to be a residence for the Spitales, but they decided to sell the property and listed it with a realtor, Sharon Straw. Because the home was slow to sell, Spitale rented it to the Rogers commencing January 1988.
Charles Smith became interested in the Spitale home after seeing it pictured in a real estate advertisement. He contacted realtor Straw and toured the home. In April 1988, Smith and his wife[2] contracted to purchase the home for $465,000, with a closing deadline of June 1988. Smith was aware that the home was being rented, but he did not ask the tenants any questions about the home.
Paragraph six of the contract, entitled CONDITION OF PROPERTY AND WARRANTY, provided in pertinent part:
Between the Contract Date and the closing date, the property, improvements, and any personal property shall be maintained by SELLER in the same condition as existed as of the Contract Date, ordinary wear and tear accepted. SELLER warrants that all major appliances and the heating, cooling, plumbing, electrical, and pool systems, installations and machinery included in the sale shall be in working condition as of the closing date. BUYER may inspect same prior to closing....
No express warranties concerning the general condition of the home were otherwise incorporated.
During their tenancy, the Rogers diligently reported in writing any problems with the home. Mr. Rogers recalled that Spitale responded by making satisfactory repairs. In February 1988, Mr. Rogers wrote Spitale:
Enclosed please find our checks totaling $2,000.00 for payment of March rent on your house. I thought it also necessary to outline the items we discussed that were in less than normal condition when we took occupancy, so that it is clear we did not create the condition. The items are as follows:
1. Carpeting stainsin living room near tile steps and in family room near French doors, probably caused by painters or tile cleaners.
2. Discoloration of quarry tilethroughout the house and outside pool area, stains from construction and bleeding (white film) and improper sealing of concrete base or tile.

*343 3. Cabinets and utility room sink top drawer fronts, kick plates and door loose. Sink top discolored and stained in utility room.
4. Landscapingmany plants dying, several missing, sod sparse and not growing under treed areas, master bath palm and general garden on side of window in poor condition.
As we have discussed we will take good care of your property and make every effort to keep it in showable condition but we cannot change the status of the above listed items unless you care to assume additional costs to complete. Let us know if there is anything mentioned we can help you to correct.
On April 29, 1988, after Spitale signed the contract with Smith, Mr. Rogers wrote Spitale again:
The following are items that should be corrected as convenient to keep your house in first class saleable condition. We do not need them done. But you should be aware that they exist.
1. Need to lay 6 or 7 strips of sod above storm drains in N.W. corner of yard, nothing but weeds and bare ground there now because of low spot and past water cut. Looks bad.
2. Front door needs adjustment and repairTight fit at bottom, loose door stop causing cracking at lower corner of stationary door.
3. Two hot water hook ups on west sinkmaster bathno cold water.
4. Several roof tiles have blown off and broken during past month. Also looks like you have water leaks on roof above garage door.
5. As previously mentioned 3 or 4 trim tiles in driveway cracked and need to be replaced. Will only get worse.
Spitale testified that he looked at all of these problems and arranged to have them corrected. He advised his builder of the problems with the roof, and the builder called in the original roofer to make the repairs. Spitale believed that the roofing problems were corrected before closing.
Realtor Straw conducted a walk-through of the home with Mrs. Rogers prior to closing. As a result, Straw wrote to Smith on May 27, 1988:
I've just done a walk through with Judy Rogers and want you to be aware of a few minor problems.
1) Front door cracked at basewill be fixed and deducted from tenants damage deposit.
2) Carpet stains in living room near steps and family room near French doors.
3) Kick plates need tightening in kitchen to be fixed by owner.
4) Sink top in utility room stained.
5) No hot water in master bath loft sink to be fixed by owner.
6) No power in outlet2nd bath.
7) Outside French doors need touch up paint.
8) Some staining and discoloration of terra cotta tile.
Straw testified that she and Mrs. Rogers inspected every room and that if she had noticed any water stains, she would have mentioned them in the letter. She admitted that interior water stains she observed in subsequent visits well after closing were not visible at the time of her inspection a week before closing. Smith, himself, performed no inspection of the home pursuant to paragraph six of the contract. The closing took place by mail on June 3, 1988. Smith never met or spoke to Spitale either before or after the closing. The Rogers continued to rent the home until November 1988.
Smith testified that when he visited the home in the fall of 1988, the tenants showed him water stains in the front guest bathroom and in a corner of the garage. However, Mr. Rogers testified that at the time he and his wife moved out in November 1988, they had seen leaks only in the garage. Before the Rogers moved out, Mrs. Rogers gave Smith a copy of their April 29, 1988, letter to Spitale.
Spitale was living in California in the fall of 1988. His Sarasota lawyer, friends, and business associates knew of his whereabouts and he was receiving forwarded mail. In early 1989, Spitale returned from California *344 and moved into a rented home in The Landings, a couple of blocks from the Smiths. Smith never contacted Spitale to inform him of any problems with the home prior to filing suit in 1992.
Instead, Smith hired roofer Alvin Singleton to check the roof. He reroofed the flat portion on the north side of the house and replaced broken tile on the sloped portions for $3000. Singleton testified that he did not consider his work to be a temporary job. He warranted the work for three years, but no warranty claim was made by Smith from 1988 through 1991.
Smith testified that additional areas of the home began to reflect leak damage in 1989. Although interior leak damage apparently continued to occur, Smith took no action to fix the damage until February 1991, when he repaired interior water damage for $3150. In the fall of 1991, Smith hired roofer Chris Koloski to pressure clean the home, repair the flat roof areas worked on three years earlier by Singleton, repair broken tile, reset tile caps, and correct other areas of the roof. Smith paid Koloski $3200.
Koloski testified that he told Smith that the work he was doing could stop the water from coming in. He stated that pressure cleaning was normal maintenance for a house of that age; that a blister he cut out and patched was a correction of Singleton's work; that the amount of broken roof tile he observed was not unusual; and that the tile repair he performed was permanent. He further testified that he offered a three-month warranty on his work, but did not receive any warranty claims from Smith.
The home apparently continued to experience interior water damage after Koloski's work was completed. In 1992, Smith retained Jack Appleby, a home inspector. Appleby reported interior leak damage; exterior wall damage; rotting of a door from lack of flashing; termite damage; lack of sufficient roof downspouts; stucco cracking from insufficient stucco thickness; deficiencies in Singleton's and Koloski's repair work on the roof; sliding roof tiles; and lack of roof tile adhesion. Smith made no effort to contact Spitale, Unicorn Construction, Singleton or Koloski concerning Appleby's findings. In June 1992, after having spent a total of $9350 on corrective measures and maintenance on the home over the four-year period subsequent to closing, Smith sued the Spitales.
Count III of the complaint, the sole count upon which the court found liability, alleged in pertinent part:
17. Defendants knew, or should have known, of the defects set forth above which materially affected the value of the subject property, and were under a duty to disclose them to the SMITHS.
18. Defendants breached their duty to the SMITHS by failing to disclose the material defects in the property. The SMITHS were unaware of the material defects at all times prior to the closing on the property. As a direct and proximate result, the SMITHS have been damaged.
In their answer to the complaint, the Spitales denied that they made representations to the Smiths, that they knew or should have known about any of the defects alleged by the Smiths, and that the defects materially affected the value of the home.
In 1995, seven years after Singleton first replaced the flat portion of the roof, Smith brought a roofer from New Hampshire to again replace the flat portion of the roof, for which he paid $24,662. He also spent $3000 in 1995 to pressure clean the tile roof, pool deck and pool cage, patch stucco cracks, caulk and paint the exterior and seal the pool deck. The only other direct loss Smith claimed was $2000 in rental income before the flat roof was replaced in 1995. He testified that there had been no leaks at the home since the flat roof was replaced in 1995.
Jack Appleby, Smith's expert, testified that the entire tile roof needed to be replaced at an anticipated cost of $35,750, but that the cost if done in 1988 would have been $31,000. Sy Elakman, a certified roofing consultant and general contractor, testified as Spitale's expert. His opinion was that, other than being dirty and unmaintained, the roof was "better than average" for a ten-year-old roof. He opined that the tile roof did not require replacement.
Smith presented no expert testimony regarding the diminution of the value of the *345 home as the result of the alleged nondisclosure by Spitale. Over objection, the trial court allowed Smith to testify that he thought the fair market value of the home when he bought it was at least $50,000 or $60,000 less than what he paid because it was going to cost that much to fix it. The trial court entered final judgment for Smith only on count III, the fraud claim, and awarded him the sum of $50,000 in damages. No rationale was given in the judgment or on the record to explain the amount of the damages.
Because the trial court based its finding of liability only on the cause of action brought in count III of the complaint, we need not discuss Smith's alternative theories of breach of contract and breach of an implied warranty pleaded in counts I and II.
The allegations in count III set forth a cause of action governed by Johnson v. Davis, 480 So.2d 625 (Fla.1985). In Johnson, the court held that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." Id. at 629. Under Johnson, the buyer need not prove that the seller's nondisclosure was motivated by an intent to defraud. See Billian v. Mobil Corp., 710 So.2d 984, 988 (Fla. 4th DCA 1998). "If the facts of a case give rise to a duty to disclose under Johnson, the seller's state of mind motivating the failure to disclose is immaterial; the forgetful or unsophisticated seller is just as liable as the knowing dissembler." Id. However, to be actionable, an undisclosed fact must materially affect the value of the property. The materiality of a fact is to be determined objectively by focusing on the relationship between the undisclosed fact and the value of the property. Id. at 987.
On appeal, Spitale argues, among other things, that Smith failed to prove Spitale's knowledge of the leaking roof defect. We agree that the evidence and inferences therefrom, even when construed most favorably to Smith, fail to sufficiently prove that Spitale had knowledge of a defect materially affecting the value of the property, as required by Johnson.
Smith's complaint alleged that the roof on the residence was leaking in 1989. The letter of April 29, 1988, from tenant Rogers provided the only evidence that Spitale had knowledge of any roofing problem. The relevant portion of the letter was item number four: "[s]everal roof tiles have blown off and broken during past month. Also looks like you have water leaks on roof above garage door." Spitale testified that after receiving this letter, he did what he could to correct the problems and, as far as he knew, the repairs were made. Tenant Rogers testified that he did not experience any leaks in the home during his tenancy, which ended in November 1988.
Under these circumstances, the April 28, 1988, letter alone does not support the inference that Spitale knew of a structural problem with the roof that was likely to recur, particularly given the evidence that when Spitale repaired the roof, he reasonably believed that the problem was not indicative of a major defect or a recurring problem. Thus, the April 29, 1988, letter fails to sufficiently prove that Spitale knew of "facts materially affecting the value of the property" as required by Johnson. We further conclude that no evidence was presented at trial to show that Spitale was on notice of the other defects aside from the leaking roof that were alleged in the complaint: lack of waterproofing or flashing of the exterior walls, windows and doors; improperly installed tile roofing system; lack of adequate drainage on the roofing system; and inadequate thickness of stucco on the exterior of the residence.
As we have said, "Johnson does not convert a seller of a house into a guarantor of the condition of the house." Slitor v. Elias, 544 So.2d 255, 258 (Fla. 2d DCA 1989). The judgment was improper because Smith did not prove by competent, sufficient evidence Spitale's knowledge of a defect which materially affected the value of the house.
Accordingly, we reverse and remand for entry of judgment in favor of the defendant.
PATTERSON, A.C.J., and QUINCE, J., Concur.
NOTES
[1] Mrs. Spitale is not a party to this appeal. Final judgment was entered in her favor on all counts.
[2] Mrs. Smith was dismissed from this action in earlier proceedings. See Smith v. Spitale, 675 So.2d 207 (Fla. 2d DCA 1996).