NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TIMOTHY D. EIMAN and )
AMANDA EIMAN, )
                  )
       Appellants/Cross-Appellees, )
                  )
v. )       Case No. 2D13-4553
                  )
ALONZO SULLIVAN and )
WENDY SULLIVAN, )
                  )
       Appellees/Cross-Appellants. )
                  )

Opinion filed May 22, 2015.

Appeal from the Circuit Court for
Pinellas County; Bruce Boyer, Judge.

Kimberly L. Sharpe of Johnson, Pope,
Bokor, Ruppel & Burns, LLP, Clearwater;
and Charles A. Samarkos of Johnson,
Pope, Bokor, Ruppel & Burns, LLP,
Clearwater (substituted as counsel of
record), for Appellants/Cross-Appellees.

Steven F. Thompson of Thompson &
Brooks, Tampa, for
Appellees/Cross-Appellants.

CRENSHAW, Judge.

       Timothy and Amanda Eiman appeal a final judgment entered after a

bench trial awarding Alonzo and Wendy Sullivan damages as a result of the Eimans'

alleged breach of their duty under Johnson v. Davis, 480 So. 2d 625 (Fla. 1985). The

Sullivans cross-appeal only as to the amount of damages awarded. Because the Sullivans failed to provide competent, substantial evidence to prove each element of their claim, we reverse the judgment. The Sullivans' cross-appeal is moot in light of this ruling.

In early 2005, the Eimans purchased a plot of vacant waterfront land in Pinellas County as a potential site for their future home. After they acquired the property the Eimans were informed that Brazilian pepper trees, a plant species invasive to Florida, peppered the southern edge of the property and that they were required to remove the trees and stabilize the land where the trees were removed in order to prevent erosion before they could obtain a building permit. See Pinellas County, Fla., Land Development Code § 166-53(1) (2005). To comply with the requirement, the Eimans hired a third party to clear the invasive trees from the property and stabilize the cleared area with fill dirt. Mr. Eiman visited the property on several occasions during this work. Beyond these improvements, the Eimans never conducted any construction or assessments of any kind to determine the suitability of the property for building. Ultimately, they decided to purchase an existing house in a different area instead of building on the property and put the land up for sale.

In 2006, the Sullivans purchased the vacant plot from the Eimans for the express purpose of constructing the Sullivans' future home. The parties utilized a standard vacant land sales contract that indicated the Sullivans purchased the property in an "as is" condition. The contract also provided for a brief period of time during which the Sullivans could conduct any assessment they deemed "appropriate to determine the Property's suitability for the Buyer's intended use." Although they visited the property

multiple times both before contracting and in the time period between contracting and closing, the Sullivans never performed any assessments on the property to determine whether it was suitable to build their home. After closing, the Sullivans' builder began the process of submitting plans to the county in order to obtain a building permit, which included performing a subsurface investigation of the building site. The investigation revealed "subsurface conditions consist[ing] of fine sand with organic silt (muck)" at various depths within the proposed building site that would require deep foundations and large timber piles to support construction of a house. Notably, the Sullivans' proposed building site was not the same area that the Eimans had cleared and filled. Based on the study, the Sullivans' builder increased its initial estimate by $65,000, representing the amount required to install the necessary pilings to support the Sullivans' future home. Eventually, the Sullivans decided not to move forward with construction, forfeited their deposit to the builder, and put the land up for sale.

The Sullivans then filed a complaint against the Eimans and the Eimans' real estate broker alleging, among other things, that the parties breached their duty under Johnson by failing to disclose to the Sullivans a fact known to the Eimans and not readily observable to the Sullivans that materially affected the value of the property. The complaint specifically alleged that

> [s]ubsequent to their purchase of the Property, the Sullivans discovered that the Property contained a substantial amount of wetlands, swamp lands and/or low-lying areas that had been filled-in by the Eimans, or by persons working on the Eimans' behalf, and that a layer of muck existed below the fill dirt which would either prohibit the construction of their home or significantly and materially increase the cost for same.
> . . . .

- 3 -

The existence of the filled-in wetlands, swamp lands and/or low lying areas and concealment of muck constitutes a fact materially affecting the value of the Property.

The Eimans' real estate broker obtained summary judgment against the Sullivans but the case proceeded to trial against the Eimans on the <u>Johnson</u> claim. After a two-day bench trial the court determined that the Eimans breached their duty to the Sullivans and awarded the Sullivans $65,000 in damages.

On appeal the Eimans argue that the duty to disclose under <u>Johnson</u> does not apply to vacant land to be used for a residential purpose and that even if it did apply, the Sullivans failed to prove the elements of the claim. Conversely, the Sullivans argue that <u>Johnson</u> does apply and that they presented competent, substantial evidence to support the final judgment in their favor. We conclude that, even assuming the application of <u>Johnson</u> to the facts of this case, the Sullivans failed to present competent, substantial evidence of the existence of a fact that materially affects the value of the property in question and that the Eimans had actual knowledge of that fact.

First, the Sullivans failed to prove the allegations in their complaint with respect to the "material fact" element of their <u>Johnson</u> claim. According to the language of the complaint, the Sullivans' entire case as to this element was to show that "[t]he existence of the filled-in wetlands, swamp lands and/or low lying areas and concealment of muck constitutes a fact materially affecting the value of the Property. . . . [because it] would either prohibit the construction of their home or significantly and materially increase the cost for same." The Sullivans then proceeded to "muck up" their case at trial by moving beyond the allegations in their complaint and focusing on the muck underneath the proposed building site in an attempt to articulate the actual material

- 4 -

effect on the value of the property. The complaint specifically refers to the muck underneath the area that was filled-in, alleging that the muck under the fill would somehow prohibit the construction of their home, thus causing the material effect to the value. Yet, it is undisputed that the Sullivans did not plan to build their home on the area filled-in by the Eimans. Consequently, the existence of muck under the filled-in portion of the property cannot be a fact materially affecting the value of the property as alleged in the complaint because it would not actually prohibit or increase the cost of the construction of the home.

In their closing arguments below and now on appeal, the Sullivans attempt to de-muck their case by explaining that the Eimans' act of filling the area where the pepper trees were removed materially affected the value of the property because

> it made the Property appear more desirable because it appeared larger, with less wetlands. . . . it lulled the Sullivans into believing that there was more buildable square footage on the Property, when in fact . . . those areas would not support a structure without substantial special construction methods at additional expense. . . . [and] the Sullivans' builder[] testified that had the Eimans properly disclosed their clearing and filling of marshlands, he would have performed a soil boring test and the Sullivans would have been put on notice of the potential for the presence of subsurface muck throughout the Property.

However, this articulation of the effect on the value of the property is not consistent with the case as complained because it moves beyond the actual cost of construction of the proposed house and involves a determination of the potential use of the entire property. Indeed, the evidence presented showed that the property as a whole was "buildable" in the sense that the proposed house, as well as any other structure, could have been completed, albeit with modifications to the foundation. But, proving that a layer of muck exists below an area of land filled-in by the Eimans does not constitute competent,

substantial evidence of a fact that materially increases the cost of the Sullivans' future home.

More importantly, even if the presence of the muck under the filled-in portion of the property could be considered a material defect, the Sullivans presented no evidence that the Eimans had actual knowledge of this defect. "[T]o hold the seller liable under Johnson, the buyer must prove the seller's actual knowledge of an undisclosed material defect." Jensen v. Bailey, 76 So. 3d 980, 983 (Fla. 2d DCA 2011). The Sullivans argue that the fact that the Eimans removed Brazilian pepper trees and added fill to stabilize the land where the trees were located is evidence of the Eimans' actual knowledge of the subsurface conditions. However, the Sullivans presented no evidence that the Eimans ever actually observed or assessed the subsurface conditions or knew that the conditions would require increased construction costs.

In attempting to show that the Eimans had actual knowledge of the muck, the Sullivans presented the testimony of John Phillips, a geotechnical engineer. Mr. Phillips testified that when he performed soil borings along the filled-in area, he observed three distinct layers of soil. The top layer, which spanned from the surface to between 2.5 feet and 5.5 feet deep, consisted of "yellowish brown" fill dirt brought from off-site. The next layer, which spanned from the bottom of the fill layer to between six inches and five feet below the fill layer, consisted of a silty soil that Mr. Phillips explained is "commonly referred to as muck." The third layer spanned from just underneath the muck to an unknown depth and consisted of a "yellowish brown slightly silty fine sand." According to Mr. Phillips, the presence of muck in the second layer of the soil samples indicated that "something special would need to be done to prepare the

site in order to build a residence on it" because the muck soil is compressible under new loads, which could result in "excessive settlement." Mr. Phillips asserted that the layer of muck would appear "dark in color." The Sullivans' counsel then asked Mr. Phillips: "If there were no fill dirt on top of that muck layer, would it be visible to the naked eye, what would it look like?" Mr. Phillips responded: "It could be if you were to walk on a site prior to the filling and you saw the exposed ground, it would appear very dark."

Mr. Phillips' testimony does not satisfy the knowledge element because his qualified statement that the muck *could* have been visible if one saw the exposed ground is not competent, substantial evidence of actual knowledge on the part of the Eimans. The Sullivans presented no evidence that, prior to the removal of the trees from the southern portion of the property, the ground was exposed or the muck was visible. Although Mr. Eiman testified that he visited the property "several times" while it was being cleared and filled, there was no testimony from Mr. Eiman or any other witness that Mr. Eiman observed dark soil in the area or that he even would have known what the dark soil was if he had observed it. Moreover, even if Mr. Eiman had observed dark soil underneath the area covered by the pepper trees, there would still be no evidence that he knew anything about the subsurface conditions of the area where the Sullivans intended to build their home. As the complaint accuses the Eimans of knowledge of a fact that "would either prohibit the construction of their home or significantly and materially increase the cost for same," any knowledge of the subsurface conditions of the land outside of the proposed construction site would not be germane to the issue raised in the complaint. Because the Sullivans failed to present

any evidence that the Eimans had actual knowledge of the subsurface conditions of the property, the trial court erred in finding the Eimans liable under <u>Johnson</u>.

For the foregoing reasons, we reverse the final judgment in favor of the Sullivans and remand for entry of a final judgment in favor of the Eimans. <u>See</u> <u>Jensen</u>, 76 So. 3d at 986.

Reversed and remanded with directions.

ALTENBERND, J., and DAKAN, STEPHEN L., ASSOCIATE SENIOR JUDGE, Concur.