DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JESSE CARL SMITH, VI,

Appellant

v.

KINNEY LYNCH and DEBORAH O. LYNCH,

Appellees.

No. 2D2023-1376
_____

February 14, 2025

Appeal from the Circuit Court for Pinellas County; Cynthia J. Newton,
Judge.

Megan Powell and Kristin M. Rhodus of Rhodus Law Firm PLLC, Largo,
for Appellant.

Patrick J. Poff, Marie Tomassi, and Jade L. Turner of Trenam, Kemker,
Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for Appellees.

VILLANTI, Judge.

Jesse Smith appeals the trial court's order granting summary
judgment in favor of Kinney and Deborah Lynch in the underlying failure
to disclose lawsuit arising from Mr. Smith's purchase of the Lynches'
residential property.  We agree the order granting summary judgment to
the Lynches and subsequent order denying Mr. Smith's motion for
rehearing were in error.  We therefore reverse the order granting

summary judgment to the Lynches and remand to the trial court for further proceedings consistent with this opinion.

In April 2021, Mr. Smith purchased a single-family home in St. Petersburg, Florida, from the Lynches. The parties executed a standard "As Is" sales contract and, in conjunction, the Lynches filled out a Seller's Disclosure form that stated the property had sustained "slight" water damage in 2020. Specifically, the Lynches disclosed that there had been "slight water damage to carpets, water on garage floor. All areas [were] cleared and repaired." Mr. Smith subsequently procured a home inspection, which was apparently satisfactory. Mr. Smith was also advised that the Property is located in a flood zone and that he would be required by his lender to purchase flood insurance. He obtained a policy that he was told would cost approximately $2,500 per year, and the parties closed on the sale.

Mr. Smith alleges that shortly after closing, his flood insurer informed him that the policy premium would increase from approximately $2,500 to $7,791 per year. When he questioned the significant increase, Mr. Smith was told that the Property had been deemed a "severe repetitive loss," and that if he wanted additional information about the designation, he would need to complete a "FEMA Flood Loss History Report," which only the property owner is entitled to obtain. Mr. Smith learned through the FEMA report that the Property had sustained five flood occurrences since 1982, although the Lynches only owned the Property during the November 2020 flood that was disclosed on the Seller's Disclosure form. Mr. Smith also learned that the Lynches' flood insurer had paid $31,000 for damages to the Property from the November 2020 flood. Mr. Smith informs us that a "severe

2

repetitive loss" is a designation FEMA gives to properties that have four or more flood claims of $5,000 each in their history.[1]

Upon learning this information, Mr. Smith retained counsel and sent to the Lynches a demand letter for damages representing the projected additional cost of flood insurance over a thirty-year period. Mr. Smith alleged that the Lynches intentionally misled him into believing that the November 2020 water damage to the Property was "slight," when in fact the flood had caused more than $30,000 in damages, and that they also failed to disclose the Property's repeated flood occurrences since 1982 despite having the FEMA Flood History Report from when they purchased the Property. The Lynches denied any wrongdoing and thus, Mr. Smith filed the lawsuit below, alleging breach of contract for failure to disclose the Property's flood history pursuant to *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985). Mr. Smith also pleaded alternative causes of action for unjust enrichment and fraudulent inducement.

Mr. Smith alleges that the Lynches did not comply with discovery requests and filed in quick succession motions for sanctions and for

---

[1] FEMA designates as Severe Repetitive Loss (SRL) any National Flood Insurance Program-insured single-family or multi-family residential building: (1) That has incurred flood-related damage for which four or more separate claims payments have been made, with the amount of each claim (including building and contents payments) exceeding $5,000, and with the cumulative amount of such claims payments exceeding $20,000; or (2) For which at least two separate claims payments (building payments only) have been made under such coverage, with the cumulative amount of such claims exceeding the market value of the building. In both instances, at least two of the claims must be within 10 years of each other, and claims made within 10 days of each other are counted as one claim. *NFIP Flood Insurance Manual April 2020, App. I: Severe Repetitive Loss Properties*; https://www.fema.gov/sites/default/files/2020-05/fim_appendix-i-severe-repetitive-loss-properties_apr2020.pdf (last visited December 2, 2024).

summary judgment. After obtaining nonparty discovery he was unable to obtain from the Lynches via a production request, Mr. Smith filed a cross-motion for summary judgment. Following a hearing on both parties' motions, the trial court rendered an order granting summary judgment to the Lynches on all three counts of Mr. Smith's complaint.

We review orders granting summary judgment de novo. *See Moore v. Wagner*, 377 So. 3d 163, 167 (Fla. 2d DCA 2023). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a) (2022).[2] "Reversal of a summary judgment for the defendant is appropriate when 'the evidence is such that a reasonable jury *could* find for the plaintiff.' " *Riti Fin., LLC v. Patel*, 386 So. 3d 1058, 1061 (Fla.

---

[2] Rule 1.510 was revised in 2020 and 2021 to "align Florida's summary judgment standard with that of the federal courts [rule 56] and of the supermajority of states that have already adopted the federal summary judgment standard." *In re Amends. to Fla. Rule of Civ. Pro. 1.510*, 309 So. 3d 192, 192 (Fla. 2020); *In re Amends. to Fla. Rule of Civ. Pro. 1.510*, 317 So. 3d 72, 73 (Fla. 2021). The basic rule is unchanged in that a court may grant a motion for summary judgment if the moving party is entitled to judgment as a matter of law and if there is no genuine dispute as to any material issue of fact. Fla. R. Civ. P. 1.510(c). The function of a motion for summary judgment is to test the sufficiency of the evidence in support of a claim or defense. *See Rodriguez v. Avatar Prop. & Cas. Ins. Co.*, 290 So. 3d 560, 562 (Fla. 2d DCA 2020).

However, Florida's new rule rejects the old "any competent evidence"/ "slightest doubt" tests, replacing it with the federal standard: Whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See In re Amendments*, 317 So. 3d at 75-76 (quoting Bruce J. Berman & Peter D. Webster, *Berman's Florida Civil Procedure* § 1.510:5 (2020 ed.)); *see also Holland v. Verheul*, 583 So. 2d 788, 789 (Fla. 2d DCA 1991) ("If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.").

5th DCA 2024) (quoting *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1280 (Fla. 5th DCA 2023)). Mr. Smith argues that the Lynches failed to establish that a reasonable jury could not return a verdict in his favor and based upon the significant issues of material fact present in this case, we must agree.

The seminal case in Florida involving a seller's duty to disclose information about a residential property to the buyer in a sales transaction is *Johnson*. *Revitz v. Terrell*, 572 So. 2d 996, 997 (Fla. 3d DCA 1990); *see also Jensen v. Bailey*, 76 So. 3d 980, 981-82 (Fla. 2d DCA 2011); *Syvrud v. Today Real Est. Inc.*, 858 So. 2d 1125, 1129 (Fla. 2d DCA 2003); *Solorzano v. First Union Mortg. Corp.*, 896 So. 2d 847, 849 (Fla. 4th DCA 2005). In *Johnson*, the Florida Supreme Court articulated that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." 480 So. 2d at 629.

In its order granting summary judgment to the Lynches, the trial court noted that "as a threshold matter, a seller of a house located in an open and obvious flood prone zone location is under no duty to disclose the flood prone nature of the property to a Buyer under *Johnson v. Davis*." The trial court relied on *Nelson v. Wiggs*, 699 So. 2d 258 (Fla. 3d DCA 1997), in making this characterization. While that is essentially what the Third District held in *Nelson*, the trial court's application of that case to this set of facts was error because the two cases are significantly different.

In *Nelson*, the buyers of a home located in the East Everglades area of Dade County filed a lawsuit against the seller for recission of the sale contract after they closed on the sale, moved into the home, and

5

discovered that the neighborhood experienced frequent flooding during its "rainy season." *Id.* at 259-60. It is important to note that house itself had never flooded, as it was built at a higher elevation in accordance with Dade County's flood regulations, but the roads and surrounding property collected water that at times reached knee-deep. *Id.* at 259. The buyers alleged that they were unable to grow the vegetation they wanted due to the flooding and that the floodwaters prompted snakes and alligators to seek refuge on their property. *Id.* They argued that the seller had not disclosed the neighborhood's seasonal flooding, in violation of her duty to do so under *Johnson. Id.*

Following a bench trial, the trial court made numerous findings of fact in its order denying the buyers' recission claim, including that the buyers had not performed an inspection of the property, that they had not asked the seller or neighboring property owners about whether the neighborhood was prone to flooding, and that they had lived in Dade County—albeit not in the East Everglades area—for ten years prior to purchasing the home. *Id.* at 260. The trial court concluded that *Johnson* mandates that a seller disclose "facts materially affecting the value of the property *which are not readily observable* and are not known to the buyer," and therefore it was not applicable because the seasonal flooding was readily observable and could have been discovered by the buyers had they essentially performed their due diligence. *Id.* (quoting *Johnson*, 480 So. 2d at 629) (emphasis added).

Relying on the trial court's findings and concluding that "[t]here is nothing concealed about South Florida's rainy season(s) . . . about the fact that low-lying areas of the county flood during the rainy seasons, and . . . about Dade County's regulations requiring that homes in such areas be built on elevations to avoid interior flooding," the Third District

6

affirmed the trial court's judgment in favor of the seller. *Id.* at 261. The Third District in *Nelson* further observed that the buyer was a contractor who intended to renovate the home himself and who had personally visited the county permitting department and viewed the home's permit history. *Id.* Therefore, the majority reasoned, the "flood criteria to which the county required the house to be built" to avoid seasonal flooding "was within the diligent attention of the Nelsons." *Id.*[3]

In this case, the trial court's reliance on *Nelson* was misplaced because the facts and context are so distinguishable from the instant. First, in *Nelson* the buyer's failure to disclose claim was based on the flood-prone nature of the *neighborhood,* not of the actual home, as is the case here. In the instant case, Mr. Smith's home sustained repeated flooding from storms, and the Lynches urge us to affirm the trial court's finding that the flood-prone nature of the Shore Acres neighborhood should have been known to Mr. Smith. But not every home in Shore

---

[3] In his dissent in *Nelson,* Judge Sorondo questioned the standard of diligence the majority apparently intended buyers to be held:

> I am at a loss to understand what type of "inspections," beyond the customary termite and roof "inspections," the Nelsons could have reasonably been expected to conduct that would have resulted in the discovery of the flooding problem . . . . Moreover, I am not prepared to conclude that a purchaser of residential property is obligated to canvass potential neighbors to determine whether there are any "unseen" problems with the neighborhood.

*Nelson,* 699 So. 2d at 263-64 (Sorondo, J., dissenting) (footnote omitted). Judge Sorondo also concluded that the majority portrayed the seller's conduct in "a far too positive light," noting that the buyers had specifically told her that they intended to raise a large number of animals and grow trees on the property, and that she responded "that there were no limitations" to what they could do. *Id.* at 264-65. The seller also specifically told the buyers that the only problems with the property were the neighbors. *Id.* at 265.

7

Acres has sustained flooding, and it would be unreasonable to expect Mr. Smith to assume the specific home he purchased has an extensive flood history, even if he was aware that the neighborhood itself was prone to flooding. The trial court concluded that the Lynches did not have a duty to disclose the true extent of the 2020 flood *of their home* and the four previous floods *of their home* because the Shore Acres neighborhood is geographically close to Tampa Bay, but that was based on improper analogizing of the facts in *Nelson* to those presented here.

Under *Johnson*, the Lynches were required to disclose any facts that were not known to Mr. Smith, were not readily observable, and which would materially affect the value of the property. *See Johnson*, 480 So. 2d at 629. A finding of a seller's liability under *Johnson* requires that the seller had *actual* knowledge of the facts materially affecting the property. *See Jensen*, 76 So. 3d at 984 ("[T]his court has consistently reversed judgments in favor of the buyer for nondisclosure under *Johnson* in the absence of proof of the seller's actual knowledge of the defect."); *see also Brown v. Carter*, 13 So. 3d 111, 113-14 (Fla. 2d DCA 2009) (reversing judgment against sellers of home where no evidence was presented to show that the sellers had actual knowledge of home's structural problems). "While [actual] knowledge in this regard can be proven by circumstantial evidence, it must nevertheless be proven by competent, sufficient evidence . . . ." *Jensen*, 76 So. 2d at 984 (quoting *Slitor v. Elias*, 544 So. 2d 255, 259 (Fla. 2d DCA 1989)). Additionally, "a non-disclosure case under *Johnson* does not focus on the seller's state of mind motivating the non-disclosure." *Billian v. Mobil Corp.*, 710 So. 2d 984, 988 (Fla. 4th DCA 1998). Thus, unlike a fraudulent misrepresentation claim, a claim for damages under *Johnson* does not require a showing of malfeasance.

8

Based on the record evidence, a jury could conclude that the Lynches knew that the 2020 flood—which resulted in a payment of $30,000 from their flood insurer—was more than "slight water damage to carpets and water on the garage floor" because they owned the Property at the time and made the insurance claim. The record also supports that the Lynches were made aware of the Property's entire flood history dating back to 1982 because they were given a copy of FEMA's flood history report when they purchased the Property from John Della Costa in 2018. Mr. Della Costa's affidavit, submitted in conjunction with Mr. Smith's motion for summary judgment, averred that he provided the FEMA flood history report to the Lynches and their real estate agent in November 2018, prior to the closing of the sale.

Also included as an exhibit to Mr. Smith's motion for summary judgment was an email from October 2018 in which the Lynches' real estate agent requested from Mr. Della Costa's agent a copy of the flood history report, accessible then only to Mr. Della Costa, because the Lynches had been informed by their insurance agent that flood insurance would be more costly due to the Property being deemed a "severe repetitive loss property" by FEMA. Mr. Della Costa obtained a copy of the FEMA flood history report and updated his disclosure form prior to closing the sale with the Lynches. He also averred that during the time he sold the home to the Lynches, he personally showed Mr. Lynch a pump system located in the home's backyard that was designed to relieve accumulation of floodwater and advised Mr. Lynch regarding maintenance of the pump.[4]

_____

[4] Mr. Smith contends that the Lynches never specifically mentioned the pump system and he was unaware of its purpose.

9

The extent of the 2020 flood and the four prior flood events were not readily observable to Mr. Smith. With regard to the 2020 flood, a jury could conclude that the Lynches minimized the extent of the damage and by their own admission, all evidence of flood damage had been repaired by the time Mr. Smith purchased the Property. The record reflects that Mr. Smith obtained a home inspection and obtained a quote for flood insurance, neither of which yielded additional information that would have suggested the extent of the 2020 flood.

With regard to the four flood events prior to the Lynches' ownership, it is undisputed that only the property owner may request a copy of the FEMA flood history report, and thus Mr. Smith was unable to obtain it until the parties had already closed on the sale of the Property. The trial court's findings pertaining to the observability of the Property's flood history—the home's proximity to Tampa Bay, the flood-prone nature of the neighborhood—are not the "readily observable" conditions of a property that would absolve a seller of disclosing known flood events under *Johnson*. *See, e.g., Lorber v. Passick ex rel. Sylvia Passick Revocable Tr.*, 327 So. 3d 297, 303-04 (Fla. 4th DCA 2021) (reversing summary judgment in favor of seller who failed to disclose home's flood after trial court found that buyer's observation of a "musty" smell indicated the home's defect was "obvious").

Finally, one can hardly argue that the omission or concealment of four prior floods and the Property's status as a "repetitive loss property" is immaterial. "The test for determining the materiality of a fact in transactions of this nature is whether that fact 'substantially affects the value of the property.' " *Dorton v. Jensen*, 676 So. 2d 437, 439 (Fla. 2d DCA 1996) (quoting *Revitz*, 572 So. 2d at 998). Mr. Smith provided sworn statements that the Property's designation as a severe repetitive

10

loss caused his flood insurance premiums to become "prohibitively expensive," and that he will incur substantial expense by fortifying the property against future flooding. Mr. Smith also averred that had he known about the Property's history and FEMA designation, he would not have entered into the purchase contract with the Lynches. *See, e.g., Revitz*, 572 So. 2d at 998 (citing *Hauben v. Harmon*, 605 F.2d 920, 924 (5th Cir. 1979)).

Based on the foregoing findings, there was competent substantial evidence that the Lynches had actual knowledge about the home's significant flood history that were not readily observable to Mr. Smith and that were not known to Mr. Smith.

Reversed and remanded for further consistent proceedings.


KELLY and LUCAS, JJ., Concur.

_____


Opinion subject to revision prior to official publication.

11