SHANNON, Judge.
This is an appeal by John A. Weibourn, Jr., and his wife, Norma C. Weibourn, appellants, who were plaintiffs below. Plaintiffs brought suit for rescission of purchase of certain real property, together with a business located on it. The court below denied rescission and granted David Coheni and Annie Cohen, his wife, appellees, a decree of foreclosure upon the land involved.
Plaintiff had contacted The Keyes Company, a corporation, having their office irk the City of Miami, Florida, relative to purchasing some business. The Keyes Company gave him a prospectus covering the-property owned by David Cohen and his wife at Fort Pierce, known as The Market Truck Terminal. In the prospectus Cohen¡ described the buildings, etc. and, during the month of May, 195S, “one of the slower months of the year”, the prospectus stated that a profit of $5,574.20 was realized from the business. There was also described in the prospectus the measurement of certain buildings. On the strength of the prospectus, the plaintiff and the representative-of The Keyes Company went to Fort Pierce to see and look into the operations of the business. It was the first time either the plaintiff or the sales representative had1 had any contact with the Cohens. In addition to the prospectus the plaintiff testified that the defendant had represented to him that the gasoline station had sold or pumped 100,000 gallons of gasoline per month. The plaintiff, in viewing the buildings on his first trip to the place of business, had discovered that one building was not 90 feet x 90 feet as represented in the brochure, but was actually only 20 feet x 20 feet. Before purchasing and at a conference consisting of himself, his attorney and the agent of The Keyes Company, his attorney had stated:-
“ * * * and said that since there were things in there that we knew were not so, that it would be well to investigate it thoroughly before any action was taken.”
In addition his attorney advised him to-have an accountant check the books and records of Cohen, and gave him the name of such accountant. The plaintiff employed' this accountant and received an oral report *381 on the business from him. In addition to this, the agent from The Keyes Company advised the plaintiff that he could call up The Pure Oil Company, from whom Cohen obtained gasoline, and ascertain the monthly amounts that Cohen had used. This was not done. At the time the sale was made, plaintiffs’ attorney drew up the papers, which were dated November IS, 1955, and the plaintiff took immediate possession. At the time of closing, plaintiff had paid a consideration of $175,000 as follows: $45,908.-91 cash, assumption of a certain mortgage to Pure Oil Company in the amount of $71,591.09, execution of a second mortgage to David Cohen and wife in the amount of $40,000 and execution of a third mortgage to The Keyes Company in the amount of $17,500 to take care of the commission. When plaintiff purchased the property, it was subject to an outstanding lease to Pure Oil Company, and a sublease back to the Cohens, a situation which has led to another appeal, decided this date as Welbourn v. Cohen, 104 So.2d 383. After the deal was closed The Pure Oil Company advised the parties that they would consent to assignment of the sublease which would be necessary in order that plaintiffs would be entitled to possession, and within a few days of the closing the consent was executed by The Pure Oil Company, and the assignment of a sublease was executed on December 1, 1955. Thereafter and after March 1, 1956, the plaintiff went to the office of The Keyes Company in Miami, at which time he stated: “that things hadn’t been going so well and that he was unable to make the payments.” In that conversation there was a discussion about reducing the payments that he owed to The Keyes Company on the mortgage and getting a larger first mortgage to finance all the existing mortgages.
On May 25, 1957, the plaintiff finally filed a complaint seeking a rescission of a contract on grounds of misrepresentation and fraud. In this suit defendants were David Cohen and his wife, Joseph Cohen and his wife, The Keyes Company and The Pure Oil Company. David Cohen filed an answer and a counterclaim. In the counterclaim he alleged the existence of a $40,-000 second mortgage and asked that the same be foreclosed. By its final decree the court below denied plaintiffs’ prayer for rescission and granted Cohen’s counterclaim for foreclosure.
We have set out above in briefest summary the ultimate facts surrounding this transaction and the litigation growing out of it. There was testimony taken, some of which was in conflict, and the Chancellor in his final decree decided that the plaintiffs’ proof had failed to establish that the defendants had made any false and fraudulent representations to the plaintiffs upon which the plaintiffs relied. The Chancellor also found that it affirmatively appeared:
“that Plaintiffs were specifically advised that the information contained in the sales brochure was unreliable, that Plaintiffs made their own independent investigation of all matters of consequence concerning the property and business, and knew or had ready means of knowing every material fact concerning the physical condition and volume of business, past and prospective, and placed their reliance on their own investigation rather than on any information in the brochure which was erroneous or later proved to be inaccurate. ⅜ * * ”
The rule is that frauds and misrepresentations, insofar as rescission is concerned, are never presumed and must be established by clear and convincing proof. In the case of Barrett v. Quesnel, Fla.1956, 90 So.2d 706, Mr. Justice Hobson said:
“(2, 3) It is fundamental that fraud is never presumed and that the burden of proof is upon the party who asserts it, Biscayne Boulevard Properties, Inc., v. Graham, Fla., 65 So.2d 858. The chancellor was authorized to find upon this record that plaintiffs-appellants failed to fulfill their duty of informing *382 themselves of the true facts regarding the gross income of the hotel from records which were available for their inspection. Greenberg v. Berger, Fla., 46 So.2d 609. And see also Potakar v. Hurtak, Fla., 82 So.2d 502.”
In addition to the quotation above Mr. Justice Hobson, in that case, also said:
“Appellants contend that the testimony upon which final decree is based is essentially incredible, but we have reviewed it and we cannot agree. Defendant-appellee Quesnel, who was one of the sellers and the alleged defrauding party, testified unequivocally not only that he made no representations as to the income of the hotel during the year 1953 (the critical period), but also that during the time the plaintiffs-appellants were interested in purchasing the hotel, and before the contract was signed, the records of the hotel were available for examination.”
Plaintiff urges that when the auditor was checking over the books of Cohen it was significant that these books consisted of the normal books of account, but there were no accounts payable and that, hence, such investigation was made illusory by the fraud of Cohen in not making the accounts payable ledger available to the accountant. The principle for which the plaintiff is contending is undoubtedly true, but the question is whether or not the facts give rise to the application of the principle. He had an auditor check over the books of Cohen, who had been in business only some few months before the sale, and Cohen had purchased all of his gasoline and diesel oil from The Pure Oil Company. The auditor or the plaintiff could have called The Pure Oil Company and could have learned how much gasoline Cohen had bought in any given month. His attorney had advised him to investigate and he had an invitation from the realtor to call The Pure Oil Company by telephone. The investigation by the auditor disclosed that the brochure could not be relied upon and the telephone call with The Pure Oil Company was never made.
While most of the facts were in sharp conflict, the ultimate fact which the appellant has urged does not make out a case of fraudulent misrepresentation. Hirschman v. Hodges, O’Hara & Russell Co., 59 Fla. 517, 51 So. 550; McDonald v. Rose, Fla.1951, 50 So.2d 878, 880; Fote v. Reitano, Fla.1950, 46 So.2d 891, 892; Potakar v. Hurtak, Fla.1955, 82 So.2d 502.
In Fote v. Reitano, supra, in passing upon a case for rescission Mr. Justice Roberts had this to say:
“(2,3) In the second place, since reliance upon a false representation is an essential element of the plaintiff’s cause of action, the plaintiffs must prove that they were justified in relying upon the false representation, that they did rely upon it, and that they acted in reliance upon it to their injury. 24 Am.Jur., Fraud and Deceit, Section 264, page 98. In measuring their right to rely upon such representation, it has been said that every person must use reasonable diligence for his own protection. 23 Am.Jur., Fraud and Deceit, Section 155, page 961. The plaintiffs were experienced business men. They inspected the defendant’s place of business and equipment at length upon at least two occasions before signing the contract and making the deposit. There was no evidence that they were denied the right to examine the defendant’s accounts. In fact, it appears that their accountant began the examination of defendant’s books either shortly before the contract was signed, or on the day after its execution. And, certainly, it cannot be said that a representation of a $30,-000 annual net profit on a $70,000 investment should be taken at its full face value by the prospective purchaser, without some support from independent investigation by such purchaser.”
*383 Our decision m this case is primarily based upon the plaintiffs’ lack of proof of actual fraud. The question of the plaintiffs’ estoppel is not necessary for us to consider. The decree of the Chancellor must be affirmed.
Affirmed.
ALLEN, Acting Chief Judge, and STEPHENSON, GUNTER, Associate Judge, concur.