732 So.2d 356 (1999)
Mario PRESSMAN and Fanita Pressman, Appellants,
v.
Ingrid WOLF, etc., Appellee.
Nos. 97-1791, 97-3656.
District Court of Appeal of Florida, Third District.
January 27, 1999.
Rehearing Denied May 12, 1999.
*357 St. Louis, Guerra & Auslander and Charles Auslander, for appellants.
Jeffrey A. Norkin, Miami; Mark C. Katzef, Aventura, for appellee.
Before SCHWARTZ, C.J., and NESBITT and SHEVIN, JJ.
NESBITT, J.
Buyer, Ingrid Wolf, and sellers, Fanita and Mario Pressman, entered into a contract for the sale of a house on Allison Island, Miami Beach. It was clear to all that the house was in need of renovation. The transaction closed "as is" for $500,000, with no warranty provisions concerning the home's significant components, including air conditioning system and pool.
Thereafter, when repair costs mounted to more than the amount the buyer had anticipated, she filed suit against the sellers. In addition to problems she discovered in the house, the buyer claimed she had relied on the sellers' promise that all repairs could be made for $100,000. According to the buyer, however, the final cost of repair was $225,000. The buyer also maintained that the sellers had stated that the view from the island home would be improved when an obstacle was torn down by municipal authorities who planned to extend a park; however, this had never occurred.
The buyer proceeded to trial claiming breach of contract and fraudulent misrepresentation and seeking declaratory relief and claiming slander of title. After two mistrials and a jury verdict in the third trial, the trial judge entered judgment in favor of the buyer for compensatory damages of $125,799 and punitive damages of $40,000. The trial judge denied sellers' motions for new trial, J.N.O.V., and directed verdict, and awarded the buyer prejudgment interest and attorneys fees.
The sellers maintain that the home was in obvious disrepair and that the buyer was in a position to discover whatever problems the home possessed, but instead, she had chosen to take her chances. Based on such a decision, they maintain, the law does not provide a remedy. We agree.

THE DEAL
Through negotiations, the parties modified and executed the standard "Contract for Sale and Purchase." Under the terms of the agreement, the buyer was to pay $250,000 by closing, interest payments for the interim months, and $250,000 a year later. Typed onto the line describing personalty was the following representation by the seller: *358 central a/cheat, refrigerator, washer/dryer, hot water heater, stove top, existing fixture. ALL IN "AS IS" CONDITION.
Paragraph N of the contract was modified by an agreed crossing-out of any warranty that "the septic tank, pool, all major appliances, heating, cooling, electrical, plumbing systems and machinery are in WORKING CONDITION." The contract provided for inspection rights and a limitation of liability, concluding the purchaser waived all defects not declared and reported less than 10 days prior to closing.
Paragraph W, labeled "WARRANTIES." provided that:
Seller warrants that there are no facts known to Seller materially affecting the value of the Real Property which are not readily observable by Buyer or which have not been disclosed to Buyer.
This was the clause of the contract on which the purchaser based her breach and tort claims.
Paragraph A., labeled "EVIDENCE OF TITLE," allowed the seller 120 days to clear title, using diligent efforts, failing which buyer could accept the title as it then stood or demand a refund of deposits and release of the parties from further performance under the contract.
Paragraph V. labeled "OTHER AGREEMENTS," provided, in pertinent part, that:
No prior or present agreements or representations shall be binding upon Buyer or Seller unless included in this contract.
The buyer's real estate closing attorney, Kathy Gregg, or her secretary typed the "as is" clause into the contract. Either Gregg or her secretary crossed-out the line that would otherwise have provided warranties as to the pool, air conditioning and other major systems in the home. Gregg recalled advising the buyer against extinguishing these warranties, which would otherwise have required the seller to promise that these integral elements of the home were in working condition. According to Gregg, however, the buyer made a "business decision," believing sellers' assertions that the home's appliances were in working order. Defects in title were resolved by an escrow at closing on October 25, 1990, with one remaining title defect cleared in March of 1991.

THE INSPECTIONS
Prior to closing, the buyer had ordered and reviewed inspection reports on the home, several of which warned that the true condition of certain elements could not be determined without more detailed inspection. The buyer nonetheless chose not to perform any additional tests, and closed on the home.
Before signing the contract, the buyer and a friend visited the house. The buyer was concerned with the home's structural integrity and worried that there were cracks in the pool and possibly termites in the structure. She had seen that the level of the water (dirty water) in the pool was under the pool pipeline.
Building Inspection Services, Inc. (BIS) and Snapp Construction performed the pre-closing inspections at the buyer's request. These inspections uncovered possible serious problems with numerous aspects of the home. In fact, as stated above, the buyer's attorney warned the buyer prior to closing that she should renegotiate the deal because the inspections had turned up unanswered questions, including possible problems with pool, pilings and structural integrity. The buyer nonetheless decided to proceed.
The first BIS report was prepared on August 1, 1990, two months before closing and three months after signing the purchase contract. It reported evidence that termites were eating away at part of the roof, and that there was a possibility of structural damage. Prior to closing, the buyer chose not to perform further inspection although such an inspection was available to her, according to the BIS representative. *359 The home was tented for fumigation and a credit was provided at closing. The buyer also had the house treated for subterranean termites.
The same pre-closing inspection reported that the operation of the air conditioning system could not be adequately determined. One condenser unit had to be replaced and another was in need of repair. The inspection report twice concluded: "Notation: Further functionability of this system cannot be determined until all repairs are completed."
As to the pool, the BIS inspection reported that air bubbles were observed, as were cracks, indicating leakage. The report recommended that the pool system be serviced and that, due to the cracks, it be "checked for leakage over an extended period of time." The report also stated that "there is evidence of pool deck settlement."
Unhappy with the results of the BIS inspection and concerned about the pool construction, the buyer obtained another inspection of the pool and surrounding area. This inspection, from Snapp Construction, acknowledged that epoxy that had been applied to stop leakage as a temporary fix but that more work needed to be done. Snapp's findings of damage to the pool were consistent with those reported by BIS. Despite the warnings from these experts, the buyer requested no further pressure check of the pool's pipes. Thus, prior to closing the buyer knew that there could be significant problems with the pool and air conditioning system.

THE HONEYMOON ENDS
Despite the knowledge the buyer had gained from the pre-closing inspections, and her attorney's recommendation to renegotiate the deal, the buyer chose to close on the purchase contract. Her position at trial to explain how the sellers could be in breach and could have defrauded her was that the sellers had continued to state that the air conditioning ran cool, there were no termites and the pool was in perfect condition.
The buyer also claimed that the sellers had defrauded her into closing by promising that a person the sellers knew, Emilio Cruz, could renovate the house for $100,000. This was important to the buyer because her budget for the purchase was $500,000 for the home and $100,000 for renovations. The buyer never received a quote directly from Cruz before closing. Nevertheless, the buyer claimed that she would not have closed the deal absent the representation that the home could be renovated for $100,000. The contract, however, contained no reference to this alleged pre-closing representation. The buyer's testimony was that she had decided not to inform her attorney about this pre-closing representation, because she did not have a detailed quotation from Cruz.
Immediately after the buyer purchased the home, Cruz, began renovations on one room. The buyer was unhappy with Cruz's work and declined to continue using his services. Thereafter, she hired several contractors to do the job. She then filed her multi-count complaint against the sellers alleging breach of contract, fraud, fraudulent misrepresentation, and slander of title, claiming the sellers had filed three lis pendens on the buyer's title. The buyer claimed that the sellers knew of facts materially affecting the value of the property, which were neither readily observable to her, nor disclosed to her. The sellers counter-claimed, seeking foreclosure of the $250,000 purchase money mortgage, rescission of the Contract for Purchase and Sale, and establishment of a lost document (the original note and mortgage).
At trial, buyer's counsel, in closing argument, requested $125,000 in compensatory damages for the difference between the alleged representation that Cruz could renovate the house for $100,000 and the $225,000 the buyer actually spent.[1] A second *360 alleged ground for the claim of fraudulent inducement was the buyer's claim that the sellers had told the buyer that the view from the home would be altered when an "eye-sore" building was torn down by the city. Apparently that building was modified and was still standing at the time of trial. This alleged pre-closing representation was not in the contract. In closing argument buyer's counsel proclaimed that this inducement regarding the view had damaged the value of the property by $100,000, for which the buyer should be compensated and awarded punitive damages.

THE LAW AND ITS APPLICATION
Individual terms of a contract are not to be considered in isolation, but as a whole and in relation to one another, with specific language controlling the general. See South Florida Beverage Corp. v. Figueredo, 409 So.2d 490, 495 (Fla. 3d DCA 1981). See also Hollerbach v. United States, 233 U.S. 165, 49 Ct.Cl. 686, 34 S.Ct. 553, 58 L.Ed. 898 (1914); Bystra v. Federal Land Bank of Columbia, 82 Fla. 472, 90 So. 478 (1921). Here the obvious intention of the sellers was to sell the home in "as is" condition with no warranty as to the home's critical elements. The buyer, fully aware of these terms, agreed to the deal as proposed.
The buyer relies chiefly on Johnson v. Davis, 480 So.2d 625 (Fla.1985) which provides: "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." Id. at 629. In this case the buyer contends that the sellers knew of the defects in the home including the swimming pool and central air conditioning, and that those defects materially affected the value of the property. However the buyer overlooks a critical part of Johnson's much cited holding, wherein the case requiring recovery is limited to those conditions "which are not readily observable and are not known to the buyer" Id.
This distinction is outlined in Besett v. Basnett, 389 So.2d 995, 997 (Fla.1980), as cited in Johnson. Besett refers to Section 541 Restatement Second of Torts and is especially applicable to the instant situation:
s. Representation Known to Be or Obviously False.
The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.
Comment:
a. Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. (Emphasis added.)
The facts disclosed in the instant case leave no doubt that the home in this case was the functional equivalent of a one eyed horse, and recovery is barred under Johnson, Besett, and the Restatement. See Wasser v. Sasoni, 652 So.2d 411 (Fla. 3d DCA 1995)(concluding a misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence). See also Steinberg v. Bay Terrace Apartment Hotel, Inc., 375 So.2d 1089 (Fla. 3d DCA 1979); Welbourn *361 v. Cohen, 104 So.2d 380 (Fla. 2d DCA 1958).
"A buyer must take reasonable steps to ascertain the material facts relating to the property and to discover themif, of course, they are reasonably ascertainable." Nelson v. Wiggs, 699 So.2d 258, 261 (Fla. 3d DCA 1997)(concluding seller had no duty to disclose seasonal flooding as the information that the property is subject to seasonal flooding was available to the buyers through diligent attention), review denied, 705 So.2d 570 (Fla.1998). See also Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334, 339 (Fla.1997). Just as we concluded that buyer Nelson had the opportunity to discover the facts at issue for himself, we likewise conclude the instant buyer had the opportunity to discover all that she complained about in her actions against these sellers. See Rosique v. Windley Cove, Ltd., 542 So.2d 1014 (Fla. 3d DCA 1989).
Here, the parties closed on a contract that featured a prominent "as is" clause. The buyer closed while possessing inspections that patently warned of latent defects to the pool and of an air conditioning system that had not been tested, and in fact received some credits for these matters at closing. She freely elected to close on the purchase contract and is now bound by its terms.
As for the buyer's claims of fraudulent inducement, our opinion in Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 76 n. 3 (Fla. 3d DCA 1997) is fully dispositive of why her claims in this regard must fail. Key Largo relies on HTP, Ltd. v. Lineas Aereas Costarricenses, 685 So.2d 1238, 1239-40 (Fla.1996), wherein the Supreme Court adopted the analysis and explanation in Huron Tool and Eng'g Co. v. Precision Consulting Services, Inc., 209 Mich.App. 365, 532 N.W.2d 541 (Mich.Ct.App.1995):
In Huron Tool, the Michigan Court of Appeals upheld dismissal of the plaintiff's fraud claim finding the claim barred by the economic loss rule. The plaintiff had contracted to purchase a computer software system and sued for breach of contract and fraudulent misrepresentation asserting alleged defects in the software system. The court held that where the alleged misrepresentations concerned the quality and characteristics of the goods sold, they were not extraneous to the contract and the economic loss doctrine would still apply. Huron Tool, 532 N.W.2d at 541. The court noted that "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." Huron Tool, 532 N.W.2d at 545.
The facts of the instant case fall directly within that group of scenarios where the alleged fraudulent misrepresentations were inseparably embodied in the parties' subsequent agreement. See Englezios v. Batmasian, 593 So.2d 1077, 1078 (Fla. 4th DCA 1992)(holding a party may not recover in fraud for an alleged oral misrepresentation which is adequately dealt with in a later written contract); Federal Deposit Ins. Corp. v. High Tech Medical Sys., Inc., 574 So.2d 1121 (Fla. 4th DCA 1991)(reliance on oral representations in light of disclaimer in written contract was not justifiable and thus there can be no actionable fraud).
The buyer could not escape the deal made merely by pointing to the sellers' claims that the home could be renovated for a particular sum. Her accusation that the sellers told her that a building posing an obstacle to her view was to be removed also fails to state a basis for relief. It is common knowledge municipal plans change. Property records were accessible to the buyer. Statements concerning public record cannot form the basis for a claim of actionable fraud. See Nelson v. Wiggs, 699 So.2d at 261.
Also, the buyer's claim for slander of title fails. The buyer did not prove *362 that the sellers acted in a willful or wanton manner; the lis pendens were based on a duly recorded instrument, so their filing was privileged. See Palmer v. Shelby Plaza Motel, Inc., 443 So.2d 285 (Fla. 2d DCA 1983). We do agree with the buyer, however, that the trial court did not err in terminating the sellers' foreclosure action. It is undisputed that in compliance with an order of the trial court, the buyer had been paying into escrow the amount owed on the mortgage.

CONCLUSION
The buyer's claims in this case fail as a matter of law. As to buyer's breach of contract claim, the contract clearly provided what was being sold was a home in "as is" condition. As to the general duty of a homeowner to disclose known defects, the home's defects were readily observable and/or within the buyer's ability to know or easily discover. As to claims of fraudulent inducement, the sellers' comments went to the very essence of the contract and as such, under Key Largo these claims were subsumed within the breach of contract claim and barred by the economic loss rule.
Accordingly, the case is reversed and the cause remanded for judgment to be entered in defendants' favor.
NOTES
[1] According to the sellers, buyer's cost figure included landscaping costs, fixtures, mirrors and other items buyer knew were in disrepair when she first walked through the house.