DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT LORBER,**
Appellant,

v.

**JEFFREY PASSICK,**
as Successor Trustee of the Sylvia Passick Revocable Trust,
Appellee.

No. 4D20-393

[September 1, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James L. Martz, Judge; L.T. Case No. 50-2018-CA-007776-XXXX-MB.

Adam G. Heffner of Law Offices of Adam G. Heffner, P.A., Boca Raton, for appellant.

Robin Bresky and Jonathan Mann of Law Offices of Robin Bresky, Boca Raton, for appellee.

FORST, J.

Appellant Robert Lorber ("Buyer") appeals the trial court's entry of final summary judgment in favor of Appellee Jeffrey Passick, as Successor Trustee of the Sylvia Passick Revocable Trust ("Seller"), in the latter's action stemming from a failed real estate transaction. As set forth below, we conclude that the trial court erred in granting Seller's motion for summary judgment as to Buyer's counterclaims, and that the trial court therefore necessarily erred in later entering final summary judgment on the underlying complaint in favor of Seller.

## Background

Pursuant to an "'As Is' Residential Contract for Sale and Purchase" ("Purchase Agreement"), Buyer agreed to purchase certain real property from Seller. However, immediately before closing, Buyer's agent informed Seller via email that Buyer no longer consented to the Purchase Agreement. As stated in the email:

> Ever since my client first came to the home, he indicated that there was a suspicious odor. We inquired about this and asked if there was any reason or cause for this. 48 hours before closing my client finds out through his insurance company that this home had *substantial water damage throughout* which is supported by these insurance docs.
>
> My client believes that this odor is due to this water damage . . . [and] states that when he went to the home today, that the odor was strong and he sensed a burning feeling in his lungs.

(Emphasis added). Later, Buyer's agent informed Seller that Buyer had instructed him to cancel the Purchase Agreement.

### A. Buyer's Counterclaim

After Buyer failed to close on the property, Seller filed a complaint for breach of contract. In response, Buyer filed an "Answer with Affirmative Defenses and [Buyer's] Counterclaim." Buyer twice amended his Counterclaim, with the Second Amended Counterclaim serving as his operative pleading.

The Second Amended Counterclaim contained three counts—breach of contract; fraud in the inducement; and negligent misrepresentation. Buyer's breach of contact count alleged that shortly before closing, but "after the contract contingency periods had expired," Buyer discovered that the property had "suffered a significant water intrusion loss on or about April 28, 2013," resulting in a "significant settlement paid by The Hartford" for resolution of the "flood claim." Buyer therefore alleged that Seller's "failure to disclose the prior water intrusion and/or mold issues" violated the Purchase Agreement's paragraph 10(j)—which provided that "Seller knows of no facts materially affecting the value of the [property] which are not readily observable and which have not been disclosed to Buyer."

Buyer's fraud in the inducement count alleged that Seller's "failure to disclose the prior water intrusion and/or mold issues[,]" combined with Seller's knowing misrepresentations in the "Seller's Property Disclosure – Residential" form ("Disclosure Form"), which stated that the property had not been affected by any past or present water intrusion issues, or any

2

past or present drainage or flooding problems,[1] "were material and calculated to induce [Buyer] into executing the subject real estate contract[.]"

Buyer's negligent misrepresentation count pled similar allegations to those contained within the fraud in the inducement count, alleging that Seller should have known that its representations were false and that, to the extent that Seller had no knowledge of the representations in the Disclosure Form, Seller presented the form to Buyer knowing that Buyer would rely upon those representations.

### B. Seller's Motion for Summary Judgment

Seller ultimately filed a "Motion for Summary Judgment as to [Buyer's] Counterclaim[s]." In support of the motion, Seller attached several deposition statements from both Buyer and Buyer's agent, which Seller asserts demonstrated Buyer's awareness that something was wrong with the property from the moment he first set foot in the house. Specifically, Buyer testified that when he "first went into the house, there was a musty odor" that he asked about "[p]robably . . . three times." Although he attested that Seller's agent explained the smell as being attributable to the air conditioning being turned off, he stated that he continued to smell the "musty" or "dank" odor and noted that "nobody explained it away." He acknowledged thinking that the "musty" or "dank" smell might be mold and that the smell indicated to him something was wrong.

Buyer's agent, in turn, testified that "the odor was similar to other properties [he had] seen that . . . had water intrusion" and that he informed Buyer that "when we have a musty odor, there is the possibility that there is mold somewhere." However, Buyer's agent stated he did not inform Buyer that water intrusion was possible, and that mold did not always arise out of a water intrusion event.

Based on this deposition testimony, Seller argued that the "water intrusion and/or mold issue" was readily observable and that a claim for breach of contract, fraud, and negligent misrepresentation could not lie under such circumstances.

### C. Buyer's Opposition to Seller's Motion for Summary Judgment

---

[1] The Disclosure Form was signed approximately six months before the Purchase Agreement by the trust's settlor (Sylvia Passick) rather than Seller.

3

Buyer filed a memorandum of law in opposition to the motion for summary judgment. Although Buyer conceded a "dank or stale" odor was present within the property, he proclaimed that the smell was dismissed convincingly by Seller's listing agent. He further proclaimed no discernable evidence at that time showed that the odor "had any connection whatsoever to the undisputed fact that the house had suffered a prior flood, [which] was specifically not disclosed[.]" Buyer asserted that, accepting the allegations in the light most favorable to him, genuine issues of material fact remained.[2]

In support of his memorandum in opposition, Buyer attached two affidavits—one from himself and one from his agent. Within Buyer's affidavit, he attested: (1) Seller's agent had represented the smell was attributable to "the property being unoccupied and the air conditioning calling for a higher temperature"; (2) Seller's agent presented him with the Disclosure Form (stating that the property had not been affected by any past or present water intrusion issues); (3) although he continued to notice a "dank/stale odor" during the inspection period, he accepted Seller's agent's explanation of the smell because the Disclosure Form indicated that the property had suffered no water intrusion or flood damage; (4) in the days before closing, he met with his insurance agent to obtain insurance on the property, and that the agent, "[a]s a result of nothing less than serendipity, . . . was aware that the . . . property had suffered a substantial flood a few years prior"; and (5) he would have canceled the Purchase Agreement or demanded a reduction in price had he been aware of the water intrusion and/or flooding issues.

Buyer's affidavit further attested that his claim was "not based upon the existence or non-existence of mold or of an odor" and that he was "not aware of any affirmative actions [he] could have taken to investigate a flood that [he] did not know existed" and was never informed about. Moreover, Buyer claimed he had no knowledge that the mold's existence was in any way related to the flood and/or water intrusion, and that the property was "worth less than a comparable property that did not sustain" such an event.

Buyer's agent's affidavit largely duplicated Buyer's. However, Buyer's agent also attested that he had no direct knowledge that the mold's existence was in any way related to the "flood and/or water intrusion event that was resolved by the Hartford[,]" and that, in his opinion, the property

---

[2] Buyer also argued that discovery had yet to be completed, as Buyer and his agent's depositions were not complete. Buyer briefly addresses this on appeal. However, we decline to reach the issue, as it is unnecessary for our decision.

was worth less "having been the subject of a substantial flood and/or water intrusion event[.]"

### D. Trial Court's Disposition of Seller's Motion for Summary Judgment

The trial court conducted a hearing on the motion and entered an "Order Granting [Seller's] Motion for Summary Judgment as to [Buyer's] Counterclaim[s]." In the order, the court stated that summary judgment was proper because Buyer's counterclaims were premised on an obvious defect. Specifically, the court cited Buyer's testimony that he observed an odor which he thought might be mold before he executed the Purchase Agreement, as well as Buyer's agent's statement that the odor was like that detected in other properties with water intrusion issues. Based on these statements, the court found "no genuine issue of material fact that water intrusion and/or mold issues" were both readily observable and obvious to Buyer, and that Buyer's claims failed as a matter of law.

Seller then filed a motion for final summary judgment, asserting all that remained was its breach of contract claim, and Buyer's two affirmative defenses, which "raise[d] the same issues already addressed" by the previous summary judgment order. The trial court (a successor judge) conducted a hearing on the motion and granted Seller's motion for final summary judgment "as to all remaining claims." The court based its decision upon the predecessor judge's determination "that the alleged defect in the property was obvious to [Buyer]." The court stated it was "not deciding that issue again here (nor stating that it agrees or disagrees with the predecessor Judge on that issue)" and was "unwilling to reconsider the predecessor Judge's ruling on such issue." Buyer timely appealed.

### Analysis

"The standard of review of the entry of summary judgment is *de novo*." *Craven v. TRG-Boynton Beach, Ltd.*, 925 So. 2d 476, 479 (Fla. 4th DCA 2006). Under the summary judgment standard in force when Seller's motion was heard,[3] "[s]ummary judgment is proper if there is no genuine

---

[3] After the trial court issued its final summary judgment that is the subject of the instant appeal, the Florida Supreme Court amended Florida Rule of Civil Procedure 1.510(c) to adopt a new summary judgment standard. *See In re Amendments to Fla. Rule of Civ. Proc. 1.510*, 309 So. 3d 192, 194–95 (Fla. 2020) (adopting the federal summary judgment standard). The amendment, which became effective on May 1, 2021, does not apply here as the final judgment predates the amendment. *See Wilsonart, LLC v. Lopez*, 308 So. 3d 961, 964 (Fla. 2020) (stating that the amendment to rule 1.510(c) applies prospectively); *Tank*

issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). "If the record reflects even the *possibility* of a material issue of fact, or if different inferences can reasonably be drawn from the facts, the doubt must be resolved against the moving party." *McCabe v. Fla. Power & Light Co.*, 68 So. 3d 995, 997 (Fla. 4th DCA 2011) (emphasis added) (quoting *Fla. Atl. Univ. Bd. of Trs. v. Lindsey*, 50 So. 3d 1205, 1206 (Fla. 4th DCA 2010)).

On appeal, Buyer argues that genuine issues of material fact remained as to whether the "dank" or "stale" smell was sufficient to alert him to the existence of a prior flood and/or water intrusion event and that Seller's overt misrepresentations and failure to disclose the prior flood presented issues that were inappropriate for summary judgment disposition. In response, Seller contends that "there was no disputed issue of material fact that . . . the alleged defect about which [Buyer] complained was readily observable" under any of Buyer's stated causes of action. Accordingly, we must consider whether the prior flood's existence was a readily observable defect justifying summary judgment.

*A. Buyer's Breach of Contract Counterclaim*

Under Florida law, "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." *Johnson v. Davis*, 480 So. 2d 625, 629 (Fla. 1985). As to what is "readily observable," the Florida Supreme Court provided no definition. *See id.* at 629. However, our sister court's opinion in *Nelson v. Wiggs*, 699 So. 2d 258 (Fla. 3d DCA 1997) provides some guidance.

In *Nelson*, the buyers purchased real property during the dry season, unaware of the existence of seasonal flooding. *Id.* at 259–60. After learning of the property's flood-prone nature, the buyers filed suit for rescission, arguing that under *Johnson*, the seller "had the duty to advise them of the seasonal flooding." *Id.* at 260. The trial court disagreed, finding that *Johnson* was inapplicable and denying the buyers' claim. *Id.*

On appeal, the Third District discussed the meaning behind "readily observable," concluding that the phrase encompassed a broader meaning than mere visual observation. *Id.* Instead, the court defined "readily observable" as "information [that] is within the diligent attention of any

*Tech, Inc. v. Valley Tank Testing, L.L.C.*, 46 Fla. L. Weekly D1264 (Fla. 2d DCA June 2, 2021).

buyer." *See id.* at 260–61. To exercise diligent attention, the court noted that "a buyer would be required to investigate any information furnished by the seller that a reasonable person in the buyer's position would investigate" and to "take reasonable steps to ascertain the material facts relating to the property and to discover them—if, of course, they are reasonably ascertainable." *Id.*; *In re Parker*, 378 B.R. 365, 369 (Bankr. M.D. Fla. 2007) (applying Florida law).

Employing this definition, the court affirmed the trial court's entry of final judgment, holding that "the flood-prone nature of the area was within the diligent attention of the [buyers.]" *Nelson*, 699 So. 2d at 261. As the court stated, "[t]here [was] nothing concealed about South Florida's rainy season(s), nothing concealed about the fact that low-lying areas of the county flood during the rainy seasons, and nothing concealed about Dade County's regulations requiring that homes in such areas be built on elevations to avoid interior flooding."[4] *Id.*

In the instant case, Buyer's breach of contract counterclaim is, in essence, a non-disclosure claim. And, as that claim is not premised upon any misrepresentation, the failure of Buyer to exercise adequate diligent attention would be fatal to his claim. *See id.*

To demonstrate diligent attention, Buyer testified at his deposition that: (1) he had observed a "musty" odor from the moment he first set foot on the property; (2) the smell indicated that something was wrong; and (3) nobody ever adequately explained away the "musty" or "dank" odor. Under Seller's cited case of *Pressman v. Wolf*, 732 So. 2d 356 (Fla. 3d DCA 1999),[5] Buyer "had the opportunity to discover all that [he] complained about[.]"

---

[4] To the extent that *Nelson* can be read as precluding recovery for the buyer in all causes of action in which material facts relating to the property can be discovered through a public record search as part of a buyer's exercise of diligent attention, we note that the Florida Supreme Court has expressly disapproved of such an assertion in the context of fraudulent misrepresentation. *M/I Schottenstein Homes, Inc. v. Azam*, 813 So. 2d 91, 96 (Fla. 2002) ("[W]hether a cause of action for fraudulent misrepresentation exists regarding information contained in a public record presents a question of fact."). The court has also disapproved of such an assertion in the context of negligent misrepresentation. *See id.* at 94 ("[W]hen given the opportunity, this Court refused to preclude an action for negligent misrepresentation based exclusively upon the presence of the information allegedly misrepresented in the public record.").

[5] *Disapproved of on other grounds by M/I Schottenstein Homes, Inc.*, 813 So. 2d 91 (Fla. 2002). The *Azam* court disapproved of *Pressman's* assertion that "[s]tatements concerning public record cannot form the basis for a claim of actionable fraud." *Id.* at 94.

*Id.* at 361.  Indeed, if Buyer's claim had been premised entirely upon the presence of mold, his failure to discover the "musty" smell's source and lack of due diligence would undoubtedly be fatal.

However, Buyer specifically stated in his affidavit that his claim was "not based upon the existence or non-existence of mold or of an odor." Though we think it unlikely Buyer could not have discovered the damage or that the "musty" smell was attributable to some other source, Buyer testified he was unaware of any steps he could have taken to investigate a prior flood about which he was never informed, and he had no knowledge that the mold's existence was in any way related to a prior water intrusion event.  *Cf. Pressman*, 732 So. 2d at 358, 360–61 (during pre-closing inspections, several inspection companies uncovered "possible serious problems with numerous aspects of the home"; the trial court therefore noted that the home was the "functional equivalent of a one eyed [sic] horse" and that the buyer "had the opportunity to discover all that she complained about[.]").[6]

Here, Seller did not provide any evidence linking the "musty" smell to the April 28, 2013 "significant water intrusion loss" or dispute these statements.  Thus, although Buyer apparently understood (as evidenced by his agent's email) that the smell was attributable to the significant water intrusion loss, a *possible* issue of material fact exists as to whether the prior flood event was readily observable and discoverable through the exercise of diligent attention.  *See McCabe*, 68 So. 3d at 997.

Moreover, Buyer testified that the home was worth comparably less having suffered a prior flood.  Even assuming the damage was fully repaired and not discoverable, an issue of material fact exists as to whether such event affected the property's value.  *See Dorton v. Jensen*, 676 So. 2d 437, 439 (Fla. 2d DCA 1996).  Consequently, applying the summary judgment standard applicable to motions heard before May 1, 2021, we hold that the trial court erred in granting Seller's motion for summary judgment as to Buyer's breach of contract counterclaim.

### B. Buyer's Fraud in the Inducement and Negligent Misrepresentation Counterclaims

As *Nelson* acknowledged, some cases involve misrepresentations while others do not.  699 So. 2d at 261.  The Florida Supreme Court's 1985

---

[6] Further distinguishing *Pressman* is the fact that the *Pressman* ruling arose out of a jury trial, whereas the instant case was decided on summary judgment.  732 So. 2d at 357.

*Johnson v. Davis* opinion is instructive as it relates to the requisite level of diligent attention in an action involving fraudulent misrepresentation (and, therefore, fraud in the inducement). *See Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. 3d DCA 2016) (providing the same legal elements for a claim of fraudulent misrepresentation and fraudulent inducement). As to the level of diligent attention required in a case involving negligent misrepresentation, *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334 (Fla. 1997), is instructive. The following sections will examine and apply *Johnson* and *Gilchrist* in turn.

### 1. Fraudulent Misrepresentation and <u>Johnson v. Davis</u>

The elements of a cause of action for fraudulent misrepresentation (as well as a cause of action for fraudulent inducement) are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Moriber*, 194 So. 3d at 373.

In *Johnson*, the buyers contracted to purchase a home that was just three years old. *Johnson,* 480 So. 2d at 626. After paying the initial deposit—but before an additional deposit was due—the buyers "noticed some buckling and peeling plaster around the corner of a window frame in the family room and stains on the ceilings in the family room and kitchen of the home." *Id.* Upon inquiring about these issues, the sellers informed the buyers that "the window . . . had a minor problem that had long since been corrected and that the stains were wallpaper glue and the result of the ceiling beams being moved." *Id.* The sellers also allegedly told the buyers that no roof or ceiling issues ever existed. *See id.* Based on these representations, the buyers paid the additional deposit, but, several days later, "discovered water 'gushing' in from around the window frame, the ceiling of the family room, the light fixtures, the glass doors, and the stove in the kitchen." *Id.* The buyers filed suit, alleging breach of contract and "fraud and misrepresentation." *Id.*

On appeal, as to the buyers' "fraud and misrepresentation" claim, the court applied the elements of a fraudulent misrepresentation action. *Id.* at 627. The court found the sellers' statement that no roof problems ever existed "was a false representation of material fact, made with knowledge of its falsity, upon which the [buyers] relied to their detriment[.]" *Id.* Accordingly, the court held that the sellers were liable for fraudulent

9

misrepresentation, and that the buyers were entitled to recover their additional deposit. *Id.*[7]

In so holding, the court specifically stated that the buyers' reliance upon the sellers' representation was justified and supported by the proposition that a recipient may rely upon a representation's truth unless the representation's falsity is obvious. *Id.* at 628. Thus, even though the buyer did not investigate a clearly observable defect beyond inquiring of the seller, the seller's mere representation that nothing was wrong with the home entitled the buyer to recover his additional deposit. *See id.* at 627; *see also Revitz v. Terrell*, 572 So. 2d 996, 996–98 (Fla. 3d DCA 1990) (holding that, in an action concerning fraudulent misrepresentation and nondisclosure, even if property being built in contravention of local flood zone ordinances was readily observable, a buyer's "duty to exercise reasonable diligence was satisfied when he specifically inquired why other homes on the street were built on stilts").

### 2. Buyer's Fraud in the Inducement Counterclaim

As to Buyer's counterclaim for fraud in the inducement, the trial court failed to examine the claim in its proper context. Genuine issues of material fact remained as to whether Seller knew that the representations concerning the property were false, and whether Seller intended that such representations induce Buyer to enter into the Purchase Agreement. *See Grimes v. Lottes*, 241 So. 3d 892, 897 (Fla. 2d DCA 2018); *Moriber*, 194 So. 3d at 373; *Cont'l Concrete, Inc. v. Lakes at La Paz III Ltd. P'ship*, 758 So. 2d 1214, 1217 (Fla. 4th DCA 2000) ("A material fact, for summary judgment purposes, is a fact that is essential to the resolution of the legal questions raised in the case."). While Seller argues that any misrepresentation's falsity would have been discovered through the exercise of diligent attention and that the defect was therefore readily observable, Seller ignores the body of case law establishing that the requisite level of diligent attention is much more lenient in cases concerning fraud.

Here, the duty to disclose under *Johnson* "extends to a seller's real estate broker." *Goodman v. Rose Realty W., Inc.*, 193 So. 3d 86, 87 (Fla. 4th DCA 2016). Thus, because Seller's agent had a specific duty to disclose any facts materially affecting the property's value, a genuine issue of material fact exists as to whether Buyer exercised due diligence, based

---

[7] The court also held that the buyers were entitled to the initial deposit amount based upon the sellers' fraudulent concealment of issues they had known about before entering the sale contract. *Johnson*, 480 So. 2d at 629.

on his multiple inquiries regarding the smell to Seller's listing agent. *See Revitz*, 572 So. 2d at 998 n.6 (genuine issue of material fact remained as to the real estate agent's knowledge in an action for fraudulent misrepresentation and nondisclosure, which affected whether the buyer exercised reasonable diligence). Indeed, in *Johnson*, the court held that the buyers justifiably relied on the sellers' assertion that nothing was wrong with the ceiling, *despite physically observable evidence to the contrary*. 480 So. 2d at 628. In the instant case, as already noted, the substantial flood damage's alleged connection to the "musty" smell was far more attenuated.

We note the body of case law holding that "a party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract" and its application to the sale of real property. *Fla. Holding 4800, LLC v. Lauderhill Mall Inv., LLC*, 317 So. 3d 121, 124 (Fla. 4th DCA 2021) (citing *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005)). However, such case law is distinguishable here.

In *Florida Holding 4800*, the parties entered into a purchase and sale agreement for commercial property. *Id.* at 122. The agreement included an "as is" clause, which expressly stated that the seller made no representations concerning the property "or the condition or quality thereof[,]" that the buyer was purchasing the property in "as is" condition, and that neither the seller nor its agent made any representation which induced the buyer to enter the contract. *Id.* at 124. Relying on the previously stated body of law and the agreement's "as is" clause, we held that, "even if [the s]eller made oral representations to [the b]uyer regarding the property's physical condition, the [agreement] contradicted those representations[,]" thereby negating the buyer's claims for damages, including his fraud claim. *Id.* at 124.

Here, as in *Florida Holding 4800*, Buyer entered into an "as is" contract after the alleged misrepresentations. However, the instant case involved the sale of residential property. "The inclusion of an 'as is' clause in a contract for the sale of *residential* real property does not waive the duty imposed upon a seller under *Johnson*." *Solorzano v. First Union Mortg. Corp.*, 896 So. 2d 847, 849 (Fla. 4th DCA 2005) (emphasis added); *see also Syvrud v. Today Real Est., Inc.*, 858 So. 2d 1125, 1130 (Fla. 2d DCA 2003) ("An 'as is' clause in a contract for the sale of residential real property does not waive the duty imposed by *Johnson v. Davis* to disclose hidden defects in the property."); *Levy v. Creative Constr. Servs. of Broward, Inc.*, 566 So. 2d 347, 347 (Fla. 3d DCA 1990) (noting the same as to an "as is" contract as a whole); *Rayner v. Wise Realty Co. of Tallahassee*, 504 So. 2d 1361,

1363–64 (Fla. 1st DCA 1987) ("[W]e note that generally, an 'as is' clause in a contract for sale of real property cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent nondisclosure."). We find the difference between commercial and residential property sufficient to distinguish *Florida Holding, 4800* and its progeny from the instant case.

In *Johnson*, the supreme court discussed the caveat emptor doctrine before arriving at its holding concerning the duty to disclose. 480 So. 2d at 627–29. In doing so, the court recognized the "tendency of the more recent cases . . . to restrict rather than extend the doctrine of caveat emptor[,]" noting that this so-called "harness placed on the doctrine . . . has resulted in the seller of a home being liable for failing to disclose material defects of which he is aware" in other jurisdictions. *Id.* at 628. Finding that this "same philosophy regarding the sale of homes should also be the law in Florida[,]" the court held that a seller has a duty to disclose facts materially affecting a property's value which are not readily observable and not known to the buyer. *Id.* at 629.

Thus, *Johnson*'s duty to disclose delineated a clear distinction between residential and commercial property. After *Johnson*, the caveat emptor doctrine was no longer applicable to the sale of residential real property. *Green Acres, Inc. v. First Union Nat'l Bank of Fla.*, 637 So. 2d 363, 365 (Fla. 4th DCA 1994); *Haskell Co. v. Lane Co., Ltd.*, 612 So. 2d 669, 674 (Fla. 1st DCA 1993). However, the caveat emptor doctrine remained applicable (and continues to apply today) in cases involving commercial property. *See Fla. Holding 4800*, 317 So. 3d at 125. The body of case law discussed in *Florida Holding 4800* is thus inapplicable to misrepresentations regarding *residential* properties based primarily *upon Johnson*'s duty to disclose. Accordingly, we hold that the trial court erred in granting Seller's motion for summary judgment as to Buyer's fraud in the inducement counterclaim.

### 3. Negligent Misrepresentation and <u>Gilchrist</u>

In a negligent misrepresentation claim, a party is required to prove: "(1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury." *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017).

In *Gilchrist*, a buyer purchased a very large tract of land, relying on a year-old appraisal listing the property under a residential zoning classification. 696 So. 2d at 336. But the property was in fact not zoned for residential usage. *Id.* The buyer therefore sued the appraisal company for negligent misrepresentation, with the case eventually making its way to the Florida Supreme Court. *Id.* at 335–36. There, the court was tasked with examining whether a party who unknowingly transmits false information may be liable for negligent misrepresentation, even though an investigation would have revealed the information's falsity. *Id.* at 335.

The court cited *Johnson*, stating that, regarding the full disclosure of material facts, "the recipient of an erroneous representation can[not] hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error." *Id.* at 339. Notwithstanding this assertion, the court held that the failure to exercise diligent attention did not preclude recovery and instead presented a situation in which comparative negligence applied. *See id.* at 335, 339. This was because questions concerning whether: (1) the appraiser knew or should have known of the falsity of its appraisal; (2) the appraiser intended to induce the buyer to rely on the misrepresentation; and (3) the buyer acted in justifiable reliance thereon, all presented issues of material fact, for which it was incumbent upon the jury to determine the degree of negligence attributable to each party. *See id.* at 339; *see also Grimes,* 241 So. 3d at 897; *Cont'l Concrete, Inc.*, 758 So. 2d at 1217; *Revitz*, 572 So. 2d at 998 n.6 (although this case involved an action for fraudulent misrepresentation and nondisclosure, the court determined a material fact issue existed as to whether a real estate agent "knew, or should have known" of an incorrect flood insurance premium).

A lesson to be drawn from both *Johnson* and *Gilchrist* is that, even when a defect can probably be discovered through the exercise of diligent attention, the requisite level of diligent attention is of less importance in claims involving misrepresentations—especially those involving fraud. As discussed above, in *Nelson*—a case involving no misrepresentation— despite no physically observable defect at the time of the purchase, the court held that "the flood-prone nature of the area was within the diligent attention of the [buyers]." 699 So. 2d at 261. In stark contrast, in *Gilchrist*, despite the defect also being discoverable through diligent attention, the Florida Supreme Court held that the issue was one of comparative negligence. 696 So. 2d at 339. And in *Johnson*, despite physically observable defects, the Florida Supreme Court still held that the buyers were entitled to rely on the sellers' representations. 480 So. 2d at 628–29.

13

### 4. *Buyer's Negligent Misrepresentation Counterclaim*

With respect to Buyer's negligent misrepresentation counterclaim, as stated in *Gilchrist*, the issue was one of comparative negligence. 696 So. 2d at 339. Genuine issues of material fact remained as to whether Seller knew or should have known about the Disclosure Form's falsity, whether Seller intended to induce Buyer to rely on the Disclosure Form, and whether Buyer acted in justifiable reliance upon the Disclosure Form, in conjunction with Seller's agent's statement that the smell was attributable solely to the air conditioning being off.[8] *See Grimes*, 241 So. 3d at 897; *Revitz*, 572 So. 2d at 998 n.6. Thus, the trial court erred in granting Seller's motion for summary judgment as to Buyer's negligent misrepresentation counterclaim.

## Conclusion

The trial court erred in granting summary judgment as to Buyer's counterclaims, as the trial court failed to consider whether the "prior flood" was a defect that was "readily observable" in context of Buyer's specific counterclaims. Because we hold that the trial court erred in granting summary judgment as to Buyer's counterclaims, we also necessarily hold that the trial court erred in granting *final* summary judgment.[9] We therefore reverse and remand for reinstatement of all three of Buyer's counterclaims, and for reinstatement of his two affirmative defenses. Should Seller again seek summary judgment, Seller may do so under the new summary judgment standard.[10]

---

[8] Seller contends that its agent's alleged misrepresentations are immaterial, as Buyer expressly deleted allegations concerning such in his Second Amended Counterclaim, and because Buyer testified at his deposition that the Disclosure Form was the "only" thing upon which he relied. However, Buyer's memorandum in opposition to Seller's motion for summary judgment and his affidavit continued to maintain that Seller's agent misinformed him and that the misrepresentation played a role in his entering into the contract. We think this sufficient for consideration. *See Beckerman v. Greenbaum*, 347 So. 2d 141, 142 (Fla. 2d DCA 1977) ("The fact that the appellant's affidavit rather than his complaint did more to raise the principal issues is not fatal. Where affidavits . . . show that there exist genuine issues of material fact, the court may and should look beyond the issues presented in the pleadings.").

[9] Though Buyer argues on appeal that the successor judge erred in merely "rubber-stamping" the predecessor judge's findings, we do not reach that issue, and find error in granting the summary judgment based upon granting summary judgment as to Buyer's counterclaims.

[10] *See Wilsonart, LLC v. Lopez*, 308 So. 3d 961, 964 (Fla. 2020).

*Reversed and remanded.*

DAMOORGIAN, J., concurs.
WARNER, J., concurs specially with opinion.

WARNER, J., concurring specially.

I concur in the result of the majority opinion but disagree with some of its reasoning. As to the breach of contract claim, I do not think we should rely on *Nelson v. Wiggs*, 699 So. 2d 258 (Fla. 3d DCA 1997). I do not agree with *Nelson's* "diligent attention" definition nor that definition's application in a breach of contract claim. I think this definition is not in accordance with *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985), as noted in Judge Sorondo's dissent in *Nelson*.

Moreover, in *Johnson*, the supreme court actually rejected the buyer's breach of contract claim, because the contract between the parties contemplated that the roof of the residence might not be "watertight." 480 So. 2d at 627. The contract imposed no duty on the seller other than to make some repairs and the record did not indicate that the seller refused. Thus, the court found that the buyer failed to prove a breach of contract.

Contrasting *Johnson* with the allegations of breach of contract in this case, here Seller affirmatively stated in the disclosures that there were no water intrusion events. Because there was a water intrusion event in 2013, and Seller failed to disclose it, Buyer countersued for breach of contractual provision 10(j) which provides:

> (j) SELLER DISCLOSURE: Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property[.]

The water intrusion event of 2013 was clearly "not readily observable." I would not apply any type of "diligent attention" to the failure of Seller to affirmatively disclose the event which occurred four years earlier and which Seller was contractually obligated to disclose. To require a buyer to investigate public records or other avenues of information in order to confirm the representations made in a contract and add duties not contained within its provisions would inject more uncertainty in real estate contracts of residential property.

15

Even as to fraud and negligent misrepresentation claims, I do not think that *Nelson* adheres to either *Johnson* or *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334 (Fla. 1997). *Johnson* relied on the court's prior decision in *Besett v. Basnett*, 389 So. 2d 995 (1980), which held "that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." *Id.* at 998. By relying on *Besett*, the court did not apply any consideration of "diligent attention" to an affirmative misrepresentation. And in *Gilchrist*, the court simply applied standard negligence principles and comparative negligence rather that holding as a matter of law that a buyer's failure to investigate would preclude recovery.

For all of the causes of action asserted by Buyer, I agree with the majority that the court erred in granting summary judgment, even though I disagree with its reliance on *Nelson.*

\*  \*  \*

***Not final until disposition of timely filed motion for rehearing.***

16